## DYER and others *against* CADY.

20  563
77  373

*B* having indorsed a note made by *A*, for *A's* benefit, *A* mortgaged certain goods to *B*, for his security, which *B* took into his possession. *C*, an officer, then attached these goods, in a suit brought by *D*, a creditor of *A*, and took them out of *B's* possession, and afterwards sold them at the post. The note indorsed by *B* having become the property of the bank, *B* caused a suit to be brought thereon, in the name of the bank, against *A*, by writ of attachment, which *B* put into the hands of *C*, directing him to attach the same goods, subject to the former attachment. In a suit afterwards brought by *B* against *C*, for taking the goods on such former attachment, it was held, 1. that the mortgage made by *A* to *B* (having been found to be *bona fide* and valid,) the conduct of *B*, in regard to the suit brought by him, in the name of the bank, against *C*, did not affect *B's* rights under his mortgage; nor, 2. estop him from a recovery against *C*, for taking the goods on the first attachment.

The rule regarding estoppels *in pais*, repeatedly sanctioned by this court, is, that where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is precluded from averring, as against the latter, a different state of things, as existing at the same time.

*Windham,*
*July, 1850.*

*Dyer*
*v.*
*Cady.*

THIS was an action of trespass *de bonis asportatis*, with a count in trover, both counts being for the taking and conversion of the same goods. The suit was commenced in *January*, 1849.

The defendant pleaded the general issue, with notice of special matter to be given in evidence.

The cause was tried at *Brooklyn, January* term, 1850.

On the trial, the plaintiffs claimed title to the goods in question, by virtue of a mortgage bill of sale from *William H. Case*, the former owner, dated *April* 18, 1848. The object of this bill of sale, as the condition showed, was, to secure the payment of a certain promissory note of said *Case*, dated *April* 1, 1848, for the sum of 430 dollars, payable to *William Kennedy*, one of the plaintiffs, in sixty-five days from the date ; also to secure *Ebenezer Case* and *William Dyer*, the two other plaintiffs, against their liability as indorsers of another promissory note of said *W. H. Case*, dated *February* 14, 1848, for the sum of 500 dollars, payable to the order of said *Ebenezer Case*, and indorsed by him and said *Dyer*, for the benefit of the maker, to the *Mount Vernon Bank ;* and also to secure said *Ebenezer Case*, against his liability as indorser of another promissory note of said *W. H. Case*, dated *April*, 1848, for the sum of 550 dollars, payable in sixty days. These notes were produced in evidence, accompanied with evidence that said *Ebenezer Case* had, as indorser, been compelled to pay and take up the two last-mentioned notes.

The plaintiffs then introduced evidence to prove, that immediately after the making of the bill of sale, they took the goods into their possession, and kept them until the 16th of *May*, 1848, when they were taken forcibly out of their possession, by the defendant.

It was proved and admitted, that on that day, the defendant, as a deputy-sheriff, attached said goods, as the property of *William H. Case*, by virtue of two writs of attachment against him, one in favour of *Hammond, Warren & Co.*, and the other in favour of *Daniel M. Prentice*, creditors of said *Case ;* that those creditors afterwards obtained judgments in their suits, took out execution thereon, and placed them in the hands of the defendant, for collection ; that he levied them upon said goods, and afterwards, on the 21st of *August*, 1848,

sold them, at the public sign-post, and applied the avails thereof in satisfaction of those judgments. For such taking and conversion, the plaintiffs claimed, that they had a right to recover, in this action.

The defendant claimed, that he was justified in doing these acts, upon the ground that said bill of sale was fraudulent and void, as against the creditors of *W. H. Case.*

It was proved and admitted, that before the payment of the note to the *Mount Vernon Bank,* the plaintiff, *Dyer,* had caused a suit to be instituted thereon, for the benefit, and at the expence, of himself and *Ebenezer Case,* the indorsers thereof, in the name of said bank, by writ bearing date *July* 28th, 1848; which writ said *Dyer* placed in the hands of the defendant, as deputy-sheriff, with directions to attach said goods, subject to the two prior attachments; that the defendant accordingly made such attachment, on the 1st day of *August,* 1848; that said writ was duly returned to the court to which it was made returnable, and the suit was continued in court, until the *December* term, 1849, when it was withdrawn, by the plaintiffs.

The defendant claimed, that if the bill of sale was fraudulent and void, as against the plaintiffs, or either of them; or if the jury should find, that either was not entitled to recover, their verdict must be in favour of the defendant. And so the court instructed the jury.

He further claimed, that as the suit in favour of the *Mount Vernon Bank,* was brought by the plaintiffs, *Dyer* and *E. Case,* for their benefit, and at their expence; and the writ in that suit was by them placed in the hands of the defendant, as deputy-sheriff, with directions to attach the property in question, subject to the two preceding attachments, as the property of *W. H. Case;* and the defendant having so attached such property; these acts of *Dyer* and *E. Case,* as between them and the defendant, constituted a waiver of their right to the property, by virtue of said bill of sale, and estopped them from denying that said property was the property of *W. H. Case.* And the defendant prayed the court so to charge the jury.

Upon this part of the case, the court instructed the jury, that the defendant was not liable to the plaintiffs in the present suit, for any acts by him done under their directions, or

the directions of either of them, in relation to the attachment in favour of the *Mount Vernon Bank ;* nor was he liable on the count in trover, so long as he held the goods under that attachment.  But if they should find, that a good title had been conveyed to the plaintiffs, and that the defendant was a trespasser in taking the goods out of their possession, such trespass was not waived, by reason of their acts in relation to the subsequent attachment in favour of said bank; nor were they estopped from recovering for the subsequent conversion, by selling the goods upon executions in favour of other creditors.  The conduct of the plaintiffs, in relation to that suit, was, however, a proper subject for them to consider, in determining the validity of the defendant's title.

The jury returned a verdict in favour of the plaintiffs ; and the defendant thereupon moved for a new trial, for a misdirection.

*E. Perkins*, in support of the motion, contended, 1. That if either of the plaintiffs was not entitled to recover, the verdict must be for the defendant.  *Pettibone* & al. **v.** *Phelps* & al. 13 *Conn. R.* 445.

2. That the plaintiff, *Dyer*, was precluded from a recovery.  His conduct in relation to the suit brought by him, and for his benefit, in the name of the *Mount Vernon Bank*, against *W. H. Case*, and especially, his direction to the defendant, to attach the goods in question as *Case's* property, was equivalent to an express admission that those goods were *Case's* property, and liable to be taken, by attachment, or in execution, in favour of his creditors.  Upon this admission, the defendant has acted, and perfected the lien of the two first attachments, by selling the goods upon the executions obtained in those suits.  He did, as he was bound to do, if the goods were the property of *Case*.  They manifestly belonged either to *Case*, or to *Dyer*.  But *Dyer* virtually told the defendant, that they were not his, but *Case's*.  *Dyer* is now estopped to deny that they were *Case's*, as between him and the defendant.  1 *Greenl. Ev.* 207.  *Whitaker* v. *Williams*, 20 *Conn. R.* 98.

*Strong* and *J. A. Hovey*, contra, contended, 1. That the attachment of these goods, at the instance of *Dyer*, in the suit of

the *Mount Vernon Bank* against *W. H. Case*, was no waiver of *Dyer's* rights under the mortgage.

2. That the doctrine of estoppel by matter *in pais*, was not applicable to this case. In the first place, the defendant was not misled, by any thing that *Dyer* did or said ; nor was his position thereby varied. Secondly, the conduct of *Dyer*, was correct, and consistent with the facts in the case. Notwithstanding the previous mortgage and attachment, creating liens on these goods, *W. H. Case* still had an equity of redemption therein, which a creditor of his might well attach.

HINMAN, J. While the goods in question were in the possession of the plaintiffs, who held them, by virtue of a mortgage from *William H. Case*, the former owner, the defendant, a deputy-sheriff, attached them, as the goods of *Case*, took them into his possession, and afterwards sold them at the post, on an execution, regularly issued, on the judgment rendered pursuant to his attachment. They were mortgaged, to secure a note to one of the plaintiffs, and to secure the other two plaintiffs against their indorsement of other notes, made for the accommodation of said *Case*. After the seizure by the defendant, Mr. *Dyer*, one of the plaintiffs, caused a writ of attachment to be issued on one of the notes indorsed by him, and held by the *Mount Vernon Bank*, which he placed in the hands of the defendant, with directions to attach the same goods, subject to the attachment by virtue of which he first took them. This being done, the suit was continued in court until *December*, 1849, when it was withdrawn. The present suit was commenced in *January*, 1849.

The judge who tried the cause, held, that the conduct of the plaintiffs in relation to the suit commenced by *Dyer*, was a proper subject for the jury to consider, in determining as to the validity of their mortgage title ; but, if the jury should find, that a good title had been conveyed to the plaintiffs, and the defendant was a trespasser, in taking the goods out of their possession, such trespass was not waived, by reason of their acts in relation to that suit ; nor were they estopped from recovering for the subsequent conversion, in selling the goods upon executions in favour of other creditors.

There was nothing objectionable in this. On no ground has the defendant any reason to complain of it. There was,

obviously, an outstanding equity of redemption in the mortgagor, which Mr. *Dyer* might well attach, subject to the plaintiffs' mortgage and the defendant's prior attachment; and the court cannot see, that it was not his only object to take *that*. As his attachment was consistent with the validity of his mortgage, it was impossible to infer, from his conduct, merely, any admission of the invalidity of the latter. An estoppel must be certain, in order to conclude a party from proving the truth; and ought not to be made out by inference or argument.

But if it is admitted, that the conduct of Mr. *Dyer* amounts to an admission that the mortgage title was invalid, it would not, under the circumstances, estop him from proving the contrary. It would only be evidence to be considered by the jury, on that question.

The rule, on this subject, which this court has repeatedly sanctioned, is, that where one, by his words or conduct, willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is precluded from averring, as against the latter, a different state of things, as existing at the same time. *Pickard* v. *Sears*, 6 *Ad. & El.* 469. (33 *E. C. L.* 115.) *Brown* v. *Wheeler*, 17 *Conn. R.* 345. *Roe* v. *Jerome*, 18 *Conn. R.* 138.

This is a rule founded on the clearest principles of justice, and has generally been acted upon. Some of the cases, we are aware, state the principle a little more broadly; but in none of them, has it ever been intimated, that an admission, which has not had the effect to mislead a party, could amount to an estoppel, whatever might be its force as evidence, merely; and the last well considered case on the subject, while it admits the principle to be correct, seems, rather, to limit, than to extend it. *Freeman* v. *Cook*, 2 *Excheq. Rep.* 654.

But, taking the rule in its broadest sense, it is a perfect answer to the defendant's claim. The admission, here, was, subsequent to the act which fixed the defendant's liability. He could not, therefore, have been misled by it; and his position is the same, now, as if Mr. *Dyer* had never attached.

It is said, however, that the defendant sold the goods, subsequent to the last attachment; and the plaintiffs are estopped

from claiming damages for this act. If this were admitted,
it would not benefit the defendant. The jury have found, that the plaintiffs had a good title, by virtue of their mortgage;
and that the defendant was a trespasser, by reason of the original taking. Of course, the rule of damages was the value of the goods. At what time, the defendant chose to sell them, or, whether he chose to sell them at all, is of no importance, except to show the object for which he took them.

But, there is no evidence that they were sold upon the strength of *Dyer's* conduct. The inference is the other way; they were taken to secure certain debts; and they were sold to pay them: the inference is, therefore, that they were sold pursuant to the original design, rather than on the strength of the subsequent conduct of any body.

There is no foundation for the application of the technical doctrine of estoppel, to any part of this case. Mr. *Dyer* and his co-plaintiffs, had, as they all supposed, a title to the property, by virtue of their mortgage. That did not prevent their pursuing any other remedy for the collection of the mortgage debt, or any part of it. In principle, it is not unlike the case of a party, who has two securities, for the same debt: he may pursue them both, till he gets his pay. And if he had fears as to the validity of the mortgage title, we do not see any objection to his attaching the property, for the purpose of making himself as safe as he could, under the circumstances. A party in possession of property, under a claim of title, does not weaken his title, such as it is, by purchasing an outstanding claim in some third person.

We are satisfied there was no error, in the ruling of the court, and do not advise a new trial.

In this opinion the other judges concurred.

New trial not to be granted