## SUPREME COURT.

CRAWFORD, respondent, agt. LOCKWOOD, appellant.

Defendant gave his promissory note on this wise: "$33.67. Hammondsport, May 10, 1851. For value received, I promise to pay W. W. Bramhall or bearer, sixty days from date, the sum of thirty-three dollars and sixty-seven cents, *hereby waiving* the benefit of all and every exemption of property from sale on execution under the laws of this state."

The question is, did this *waiver* operate to subject his property, otherwise exempt, to the execution issued upon the judgment recovered on the note? *Held not.* Why? Because a waiver can not operate upon that which has no *present existence.* A *right* not yet in being, but which depends upon a contingency, can not be the subject of a waiver; in this respect it is like a *release.*

Neither will the principle of *estoppel in pais* apply to such a case, for the reason that it relates not to a matter of fact, but to a matter of contract. There was no *fact* involved in the transaction of which the plaintiff was ignorant; and he is presumed to know the law and the legal effect of his agreement.

Whether this term "*hereby waiving*" would, in fact, amount to an *agreement* or *contract* to waive the exempted property, *Quere?*

*Monroe General Term,* 1854. JOHNSON, T. R. STRONG, and SELDEN, Justices.

This action was originally brought in a justice's court to recover the value of certain personal property, levied upon and sold by the defendant, who was a constable, by virtue of an execution against the plaintiff.

The defence was that the execution was issued upon a judgment in favor of W. W. Bramhall against the plaintiff upon a note, of which the following is a copy:

"$33.67.              Hammondsport, May 10, 1851.

"For value received, I promise to pay W. W. Bramhall, or bearer, sixty days from date, the sum of thirty-three dollars and sixty-seven cents, *hereby waiving* the benefit of all and every exemption of property from sale on execution under the laws of this state.

"(Signed)       D. S. CRAWFORD."

It was admitted that the property taken was exempted by the statute, and the only question was, whether the waiver in the note was effectual to subject the property to the execution.

The justice rendered judgment in favor of the plaintiff for fifty dollars damages, besides costs; which judgment, on appeal to the Steuben county court, was affirmed. The defendant appealed to the general term of the supreme court.

HENRY R. SELDEN, *for plaintiff.*
SELAH MATHEWS, *for defendant.*

By the court.—SELDEN, Justice. Although our statutes, exempting certain articles of prime necessity belonging to householders from levy and sale upon execution, were intended for the benefit of the entire family, and not of its head alone, still I entertain no doubt that the master of the family may waive the exemption.

This power results from the ownership of the property. He has the right to sell and dispose of it at pleasure; and may, of course, devote it or its avails to the payment of his debts, and may select his own mode of accomplishing this object. If he choose to turn the property out upon the execution, this is no doubt a waiver of the exemption. But the question here is, whether what was done *in this case* amounted to a waiver. To determine this, it is indispensable for us to know what is essential to a valid waiver.

The first remark I have to make then is, that a waiver is not, and bears no analogy to, a contract. The distinguishing feature of a contract is, its mutuality, its *quid pro quo*, or consideration. But no consideration is necessary to support a waiver. It is in this respect like a gift, to which, indeed, it bears in many respects a close analogy.

Gifts can only be made to take effect *in presenti*. *Blackstone* says, "A true and proper gift or grant is *always* accompanied with delivery of possession, and takes effect *immediately*." (2 *Black. Com.* 441.) Of course, then, a gift must be of something *in esse* at the time. There are three things essential to every gift, to wit: a donor, a donee, and *a thing to be given*. (*Dyer*, 244.) The thing, therefore, must exist at the time, or there can be no gift.

This results, first, from the import of the term itself. To

give, implies, *ex vitermini*, a present transfer of the thing. But it also flows as a consequence from that principle of the common law, which prevents any contract from being obligatory, unless founded upon a sufficient consideration. So long as the gift is executory, it rests in agreement merely, and the want of consideration is fatal to it. It may be retracted at any time. Nothing short of the execution of the intent to give can make a valid gift.· (2 *Black. Com.* 441; Pearson agt. Pearson, 7 *John.* 26.)

An agreement to give, founded upon a sufficient consideration, would no doubt be valid *as a contract*, but it would transfer no title.

The parallel in this respect between a waiver and a gift seems to me to be close, if not perfect. To waive, no less than to give, imports a present act. If I say, "I waive" some right which I may have next week, this can mean nothing more than that when the time arrives I will not insist upon the right. It cannot extinguish a right not yet *in esse*. It is executory in its nature, and may, therefore, if without consideration, be retracted at any time; and even if founded upon a good consideration, it is still executory, and can take effect as a contract only.

It is no answer to say, that *the right* existed in this case at the time of giving the note, and that nothing was wanting but the occasion for its exercise. *The law*, it is true, existed then, but there could be *no right* to have property exempted from execution until there was an execution. The property itself, to which the right attached, may not have had an existence when the note was given.

It is clear, therefore, that this was not an *executed* waiver; in other words, it was no waiver at all, but at most a mere agreement to waive.

There is another analogy which tends with equal force to the same conclusion. By the common law, a release can operate only upon a vested, and not upon a contingent right. A release of a possibility is void. For instance, an heir-at-law cannot release to his father's disseisor, because his heirship,

and consequently the right released, is contingent. (*Co. Litt.* 265, *a ;* 10 *Coke,* 51.)

So, if a conusee of a statute release to the conusor all his right to the law, he may, nevertheless, *sue out execution,* because he has only a possibility; but no vested right to the land. (*Co. Litt.* 265, *a; Cro. Eliz.* 552.)

So if the next presentation to a church be granted to A and B, and while the incumbent is living, A releases all his right and title to the presentation to B; this release is void, it being of a right not yet *in esse.* (*Cro. Eliz.* 173 ; 1 *Leon.* 167; *Dyer,* 244; 10 *Coke,* 48.)

Now, a release and a waiver are alike in this; when valid, each operates to extinguish a right. If, then, a release can not extinguish a right, the existence of which depends upon a contingency, how can a waiver do it? Are not the cases parallel in this respect? How can a waiver operate upon that which had no present existence more effectually than a release? I can see no reason for a distinction, and am forced, therefore, to the conclusion that a right not yet in being, but which depends upon a contingency, cannot be the subject of a waiver.

The defendant, however, seeks to apply the principle of *estoppel in pais* to the case, and claims that the plaintiff should be precluded from setting up and seeking to enforce a right which he had agreed upon sufficient consideration to relinquish.

But *estoppel in pais* is a rule of evidence, and not a mode of enforcing contracts. It does not appear that the principle has ever been resorted to, to compel a person to perform his engagements, where the *facts* involved were known to both parties. Its use is to preclude a party from maintaining by evidence that which he has before denied; or disproving that which he has before admitted; when the other party has acted upon the faith of the admission or denial, in such a manner that he will be injured, unless the same is held conclusive.

It will be seen, therefore, that it is essential to every *estoppel in pais,* that it relate to some *matter of fact* which has been previously either admitted or denied by the party claimed to be estopped. An admission by a person as to the law, or as to

the legal effect of his contract, is never held to estop him. (Polk's Lessee agt. Robertson, 1 *Term. R.* 463; Boston Hat Manufactory agt. Messenger, 2 *Pick.* 223.)

It is also necessary that the fact should be one of which the party claiming the benefit of the estoppel was ignorant. The basis of an *estoppel in pais* is fraud. It is not, it is true, essential that there should have been *an intention* to deceive. But there must have been a confidence reposed, which would be betrayed to the injury of one party if the other is permitted to retract his admission or denial.

If we test this case by these rules, we shall see that it lacks the principal elements of an *estoppel in pais.* It relates not to a matter of fact, but to a matter of contract. There was no fact involved in the transaction, of which the defendant was ignorant; and he must be presumed to have known the law and the legal effect of his agreement. He could not, therefore, have been deceived in anything except the expectation that the plaintiff would perform his contract.

The case of Tuffts agt. Harris, (5 *New Hamp. R.* 452,) cited and relied upon by the defendant's counsel, is entirely different from this. There was in that case a palpable *misrepresentation* as to the ownership of the two cows, by which the officer was misled, and induced to levy upon the exempt cow. There is nothing of the kind here, no fact misrepresented or misunderstood; nothing whatever to bring the case within the principle of *estoppel in pais.*

I have thus far considered the case, as though the clause in the note "hereby waiving," &c., would amount to an agreement to waive the exemption, whenever an execution should be issued upon a judgment recovered upon the note. It may, however, be doubted whether such would be its effect. The terms import a present waiver, and not an agreement to waive in *future;* as a waiver *in presenti,* it would, as we have already seen, be inoperative. The words must undergo a material change by construction before they can be converted into an agreement to take effect *in futuro.* It is unnecessary, however, under the views aleady expressed, to decide this point.

The judgment of the county court must be affirmed.