DANIEL B. SHAPLEY, Respondent, v. SAMUEL S. ABBOTT, Appellant.

A mere verbal promise not to plead the statute of limitations, in case a promissory note shall be suffered to outlaw, is not sufficient to avoid the operation of that statute, if pleaded in an action on the note. It will not avail as an acknowledgment of indebtedness, or new promise, since the Code (§ 110), because not in writing; nor as a contract, because, if for no other reason, it is without consideration; nor by way of *estoppel in pais*, because both parties were equally informed of all the facts.

To support such a promise, on either ground, would be contrary to the policy of the statute, the object of which is to prevent fraud and perjury.

(Argued March 30th, 1870; decided June 23d, 1870.)

APPEAL from a judgment entered upon the decision of the General Term of the Supreme Court in the sixth judicial district, reversing a judgment of the Madison County Court, by which the judgment rendered in a Justice's Court, on a verdict in favor of the plaintiff, was reversed.

This action was commenced in Justice's Court, upon a due bill, dated February 17th, 1853. The defence was the statute of limitations. The action was not commenced until more than six years after the cause of action accrued. There had been no payment, nor promise in writing, whereby the same was taken out of the operation of the statute. The plaintiff, to avoid the statute of limitations, alleged in his

complaint, that before the note was outlawed, the defendant agreed with him that he would not plead the statute of limi tations, and upon the trial gave oral evidence, tending to show such agreement. The jury rendered a verdict for the plaintiff. The County Court, on appeal, reversed this judg ment, and the Supreme Court, on appeal, reversed the judg ment of the County Court; and from the judgment of the Supreme Court, the defendant has, by permission, appealed to this court.

*Samuel D. White*, for the appellant, insisted that section 110 of the Code applied, citing 31 N. Y., 289; 43 Barb., 198; 32 id., 251; 4 Seld., 368; 11 Wheat., 309; and, as to the construction of the English statute, *Dickinson* v. *Hatfield* (5 Carr. & P., 45); *Hayden* v. *Williams* (7 Bing., 163). That the facts do not constitute a waiver, or an *estoppel in pais*, he cited *Kneetle* v. *Newcomb* (31 Barb., 169); 22 N. Y., 249; *Crawford* v. *Lockwood* (9 How., 547); *Harper* v. *Leal* (10 id., 282); *Packard* v. *Sears* (6 Adol. & Ell., 469); 2 Smith's Lead. Cas., 511, 531; 3 Hill, 216; *Stedman* v. *Duhamel* (1 C. B., 50 E. C. L., 888); *Warren* v. *Walker* (10 Shep., 23 Me., 453); *Eggleston* v. *Harlem R. R.* (35 Barb., 162, 173).

*Charles Mason*, for the respondent, on the question of estoppel, cited *Gaylord* v. *Van Loan* (15 Wend., 308); *Bloodgood* v. *Utica Ins. Co.* (4 Wend., 652); *Warren* v. *Walker* (10 Shep., 453); *Wilber* v. *Pres. of Williams Coll.* 23 Pick., 302); *Brookman* v. *Metcalf* (4 Rob., 568); *Strong* v. *Ellsworth* (26 Vt., 366); *Kinney* v. *Farnsworth* (17 Conn., 355); *Roe* v. *Jerome* (18 Conn., 138); *Dyer* v. *Cady* (20 Conn., 563); *Dezell* v. *Odell* (3 Hill, 219); 2 Exch., 653; *Hall* v. *White* (3 Carr. & P., 242); *Mordecai* v. *Oliver* (3 Hawk., 479); *Trustees* v. *Williams* (9 Wend., 147); *Welland Canal* v. *Hathaway* (8 Wend., 483); *Eyro* v. *Lambly* (2 Esp. R., 635); *Ford* v. *Williams* (24 N. Y., 359, 365); *Harris* v. *Merchant* (Curtis C. C., 144); 26 Vt., 373; 30 N. Y.,

226; *Bank of Genesee* v. *Patchin Bk.* (3 Kern., 316); *Mason* v. *Anthony* (3 Keyes, 609); *Ferguson* v. *Hamilton* (35 Barb., 427); 26 Barb., 611; 17 How., 569; 4 Barb., 495; 10 Paige, 326; 7 Paige, 68; Roberts on Frauds, 2d Am. ed., 135, 138; Willard's Eq., 283; 14 John., 15, 35, 36; 1 John. Ch., 149; 3 Barb., Ch. R., 413.

EARL, Ch. J. The note bears date February 17, 1853. The plaintiff was sworn on the trial, and the following is his evidence, so far as it is material here: "I had a conversation with defendant in the month of September, 1858; a short time before that I had received a line from defendant, asking me to pay the costs in the Nye matter; they were Abbott & Moore's costs; they defended a suit for me; I came up to his office to see him; he was not there; I then went to his house and found him; I told him I came up to settle the matter of those costs, and offered to pay the balance of them after deducting this note; I told him the note would outlaw soon, and something must be done about it; that I had waited on him for most six years; he told me if the note did outlaw he would not plead the statute of limitations on it; that I might rest assured of it; I told him that I had waited on the settlement of matters nearly six years; I was pressing him to pay the note, and told him when he did I would pay the Nye matter; this was the only note I had against defendant at the time; defendant refused to apply the note in payment of the Nye costs, because, he said, the costs were Abbott & Moore's, and the note was his individual matter; if defendant had not made this promise or agreement not to plead the statute I should not have let this note run more than six years without suing it; I should have sued it within six years after its maturity if it had not been for that agreement; I let the note outlaw because of defendant's agreement." The defendant was also sworn, and positively denied the agreement not to plead the statute, and yet, for the purpose of this appeal, the facts testified to by the plaintiff must be taken as true. The only question for us to consider is,

whether these facts were sufficient to save this note from the-statute of limitations.

Prior to the Code, what took place between the parties in September, 1858, would have been sufficient to take the note out of the operation of the statute of limitations. It would only have been necessary for the plaintiff to show an uncon-ditional acknowledgment of the existence of the debt; and this could have been shown by proof of a direct acknowledg-ment, or by proof of facts from which it could be properly inferred. (Angell on Lim., § 208, etc.; *Dean* v. *Hewit*, 5. Wend., 257; *McCrea* v. *Purmort*, 16 id., 460, 477; *Henry* v. *Root*, 33 N. Y., 526; *Cocks* v. *Weeks*, 7 Hill, 45; 1 Greenl. Ev., § 197.) In the case of *McCrea* v. *Purmort*, Cowen, J.,. says: " The admission of a debt is available to take it out of the statute of limitations, whether that admission be express or tacit, and it may be implied from the conduct of the party." Here the plaintiff went to the defendant with this-note, in substance claiming the whole of it to be due, and requested him to allow the amount of it upon the bill of. Abbott & Moore's costs. The defendant refused thus to allow it, not in any way denying his liability upon it, not upon the ground that the amount of it was not due as. claimed, but upon the sole ground that the costs belonged to him and Moore jointly, while the note was his individual debt; and when plaintiff pressed him to arrange the note as suggested, on the ground that it would soon outlaw, instead of denying his liability in any way, he said to the plaintiff that he might rest assured that he would not plead the statute of limitations if it did outlaw. It seems. to me that this language, without anything to qualify it or weaken its force, furnishes very conclusive proof of an acknowledgment of the debt. When the holder of a note presents it to the maker and requests payment, upon the ground that it is about to outlaw, and the maker, without in any way denying his liability, says that he will not plead the statute of limitations if it should be permitted to run, I think such a declaration is, under the circumstances, of itself suffi-

cient evidence of an acknowledgment of the debt, within the cases decided before the Code, to take the note out of the statute. It was so held in *Burton* v. *Stevens* (24 Vermont, 131).

The acknowledgment, then, proved in this case, would have been sufficient to take this note out of the statute of limitations, if it had not been for section 110 of the Code, which provides that "no acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this title, unless the same be contained in some writing signed by the party to be charged thereby." The only effect of this section is to require that to be proved by writing which could before be proved by parol. (*Hayden* v. *Williams*, 7 Bing. R., 163.) Hence, if the plaintiff relied upon what the defendant said in September, 1858, as an acknowledgment to take the note out of the statute, he would fail simply because it was not in writing. If he relied upon what the defendant then said as an agreement not to plead the statute, he would fail, if for no other reason, because there was no consideration for the agreement. He did not agree with the defendant that he would wait and permit the note to outlaw. Neither could he rely upon what then took place as a waiver by the defendant of the statute of limitations, because there was no consideration to uphold the waiver. The defendant did not then have the right to plead the statute, and this was at most a mere promise to waive it. (*Crawford* v. *Lockwood*, 9 How., 547.) The only ground, therefore, the plaintiff has to stand on is, that the defendant is estopped by what he said from pleading and availing himself of the statute; and whether the doctrine of equitable *estoppel in pais* is applicable to a case of this kind, under the law as it now is, is the only question in this case remaining to be considered.

Now, what is an equitable *estoppel in pais*, as generally understood and applied in the courts? It is used to preclude a party from maintaining, by evidence, that which he has before expressly or tacitly denied, or disproving that which he has before expressly or tacitly admitted, when the other party has

acted upon the faith of the admission or denial in such a manner that he will be injured unless the same is held conclusive. It is said by Justice SELDEN, in *Crawford* v. *Lockwood*, "that it is essential to every *estoppel in pais* that it relate to some matter of fact which has been previously either admitted or denied by the party claimed to be estopped. An admission by a person as to the law, or as to the legal effect of his contract, is never held to estop him. It is also necessary that the fact should be one of which the party claiming the benefit of the estoppel was ignorant. The basis of an *estoppel in pais* is fraud. It is not, it is true, essential that there should have been *an intention* to deceive. But there must have been a confidence reposed, which would be betrayed to the injury of one party if the other is permitted to retract his admission or denial." In *Knettle* v. *Newcomb* (31 Barb., 169), Justice PRATT, speaking of *estoppel in pais*, says: "The defence is not available, for the reason that both sides were aware of all the facts." In *Hutchins* v. *Hibbard* (34 N. Y., 24), it is held that an *estoppel in pais* does not arise from the mere omission to give special notice of an equity to one already aware of its existence. In *Dyer* v. *Cady* (20 Conn., 563), HINMAN, J., says: "The rule on this subject, which the court has repeatedly sanctioned, is that when one, by his words or conduct, willfully causes another to believe the existence of a certain state of things and induces him to act in that belief, so as to alter his own previous position, the former is precluded from averring, as against the latter, a different state of things as existing at the same time." In *Roe* v. *Jerome* (18 Conn. R.), the defendant had represented that a certain bill of exchange was good business paper; and it was held that he could not be permitted to deny that, as against a person who had received it upon the credit of such assertion. And it is said in reference to this, that "whoever, by his words or conduct, causes another to believe in the existence of a certain state of things, and thus induces him to act on that belief, so as injuriously to affect his previous position, he is concluded from averring a differ-

ent state of things as existing at the time. And even if a party negligently and silently stands by and allows another to contract, on the faith and understanding of a fact which he can contradict, he cannot afterward contradict that fact, as against that person who may be injured thereby." In *Packard* v. *Sears* (6 Adol. & Ellis, 475), the plaintiff's property was in the possession of an execution debtor, and he stood by consulting with the execution creditor, making no claim whatever to the property, while the officer sold it to the defendant. It was held that he could not recover against the defendant in an action of trover, on the ground that he had authorized the sale. The court say : "When one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." In *Dezell* v. *Odell* (3 Hill, 215), an officer had levied upon property and had delivered it to a receiptor, and it was held that the receiptor was estopped from claiming title to the property. It was said by COWEN, J. : "We then have a clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This I understand to be the very definition of an *estoppel in pais*."

I have cited these cases from a great many, simply to show the language used, with great uniformity, by the courts in reference to *estoppels in pais*. With the exception of a few cases, which I will soon notice, my attention has been called to cases only where this doctrine was applied to conclude parties who had expressly or impliedly admitted or denied certain facts ; and to no cases where a party had only promised something for the future, when the facts were equally known to both parties. In this case the fact that the note would outlaw was equally known to both parties. The plaintiff

did not rely upon the statement of any fact made by the defendant, but he relied upon the promises of the defendant, which the latter saw fit to break. If a creditor should present his claim to his debtor, not knowing precisely when it fell due and when it would be outlawed, but believing that it was about to outlaw, and the debtor, professing to know when it fell due and when it would outlaw, should represent that it had a month longer to run, and request the creditor to delay, and the creditor should thereupon delay the month, when in fact the claim had but one week to run, the debtor would be concluded by the statement he had made, and would be estopped from claiming that the claim was outlawed before the expiration of the month. Here would be the representation of a fact upon which the creditor, not knowing the truth, relied. As another illustration of the rule, as I claim it to be: suppose I meet the maker of a note which I hold, and we both know that it is about to outlaw, and I request him to give a written acknowledgment, renewing it, and to leave it with my banker, and he promises to do so; I afterward see him, before the note is outlawed, and he says he has done so, and I, relying upon this, permit the statute to run. But it turns out that he did not leave the written acknowledgment. Here again would be the representation of a fact; and in a suit upon the note, the maker would be concluded by his representation, upon which I relied, and would be estopped from denying a written acknowledgment.

Our attention has been called to the cases where it has been held that a party may be prevented by estoppel from availing himself of the defence of usury. (*Ferguson* v. *Hamilton*, 35 Barb., 427; *Chamberlain* v. *Townsend*, 26 id., 611; *The Merchants' Bank of Brooklyn* v. *Townsend*, 17 How. Pr., 569; *Mason* v. *Anthony*, 3 Keyes, 609.) In all these cases there was the representation of a fact, to wit, that there was no usury, to a party ignorant of the truth and who relied upon the representation. But suppose the representation had been made to a party who knew of the usury, or

suppose there had simply been a promise not to plead usury, would the courts have held that there was any estoppel?

In the cases of *Crawford* v. *Lockwood* (9 How. Pr., 547), *Knettle* v. *Newcomb* (31 Barb., 169), and same case (22 N. Y., 249), it was held that a waiver, in writing, of the benefit of the statute of exemptions, made at the time the credit was given, did not estop the party from claiming the protection of the statute, although he obtained the credit from the other party by his reliance upon this waiver. In the first two cases, the decisions were placed upon the ground that the doctrine of estoppel did not apply, as there was no representation of a *fact* by the one party which was unknown to the other party, and upon which he relied. In the last case, the decision was put upon the broad ground of public policy; and it was held, in substance, that the agreement to waive the benefit of the statute of exemptions could not operate in any way, either as a waiver, or as an agreement, or by way of estoppel, for the reason that it would subvert the policy of the law. The same reason will apply to this case. The policy of the statute, requiring that every promise or acknowledgment, to take a case out of the statute, shall be in writing, signed by the party to be charged, is to prevent fraud and perjuries. And it is the duty of courts so to administer the law as to uphold this policy. If a parol promise not to plead the statute is to be held operative, either as a waiver, or an agreement, or by way of estoppel, to subvert the statute, then all the mischief, as this case shows, will be let in which it was the policy of the law to shut out.

The statute of frauds requires certain contracts to be in writing. Can a party be deprived of the benefit and protection of this statute by any parol waiver, agreement or estoppel? Suppose a seller of real estate should agree with the purchaser that it need not be reduced to writing, and that he would not plead the statute of frauds; would he be estopped, when sued upon the contract of sale, from setting up the statute as a defence? No case can be found asserting such a doctrine. Courts of equity, not courts of law, will

enforce the specific performance of parol contracts for the
sale of lands in cases of part performance. (Story's Eq.
Jur., § 759, *et seq.*) But this is not upon the doctrine
of estoppel, but upon that of fraud. These courts have
jurisdiction of frauds, and, under this acknowledged head
of jurisdiction, they take jurisdiction of such cases and
administer their equitable relief by compelling perform-
ance. If they proceeded upon the doctrine of estoppel, there
would be no necessity for part performance, and they could
afford relief in every case where the writing was omitted in
reliance upon the declarations or promise of the other party,
waiving or agreeing not to plead the statute; and if the
doctrine of estoppel controlled such cases, payment or part
payment would be just as effectual to uphold the estoppel as
any other part performance; and courts of law, as well as
courts of equity, would uphold such contracts, as the defend-
ant would always come into court estopped from denying that
the contract was in writing. I have no doubt that, if the
buyer of land should have the contract drawn and left with
his attorney for the seller to sign, and the latter should repre-
sent to him that he had signed it, and on the faith of this the
buyer should pay the purchase money, the seller would be
estopped from denying that he had signed it, and the contract
could be enforced, certainly in equity, and I think in law.

A party may, undoubtedly, without trenching upon public
policy, waive the defence of usury, or of the statute of frauds,
or of the statute of limitations, by omitting to set up the
defence when sued. And he may waive his statute exemp-
tion by turning out exempt property when the officer comes
with the execution; but no case has occurred to me in which
a party can, in advance, make a valid promise that a statute
founded in public policy shall be inoperative.

There are a few cases which seem to be in conflict with the
conclusion I have reached as to the statute of limitations. In
*Warren* v. *Walker* (23 Maine, 453), there was, at the bottom
of a bill, the following memorandum, signed by the defend-
ant: "I hereby waive all defence which I might otherwise

make to the above bill, by law, under and by virtue of any statute of limitations;" and it was held not sufficient, as an acknowledgment of indebtedness, or as an express promise, to take the case out of the operation of the statute of that State; because the statute required that the promise or acknowledgment should be not only in writing, but " an express one;" and here it was only an implied promise. It was held, however, that this memorandum contained an implied agreement not to set up the statute; and, as there was a *consideration proved for this agreement* (unlike the case we are considering), it was held that the defendant was bound by the agreement. But in *Hodgdon* v. *Chase* (29 Maine, 54), it was held that a parol promise, founded upon a valuable consideration, made by the defendant to waive the statute of limitations and take no advantage of the same, would not preclude him from setting up the statute as a defence; and such is the settled law in that State. (32 Maine, 169.) In *Webber* v. *Williams College* (23 Pick., 302), the treasurer of the college addressed a letter to the plaintiff in answer to a demand for payment, proposing that, if he would forbear bringing his action at that time, he should have the same rights for one year more, that he then had; the plaintiff, in answer, stated that he would not consent to postpone bringing his action as proposed, but in point of fact he did so postpone it till after the six years. The court held that it was a sufficient compliance with the defendants' offer; that they were bound by it, and that it was a good waiver of the statute of limitations. The decision was not put upon the doctrine of estoppel, but seems to have been put upon that of waiver. If the court intended to rest its decision solely upon the latter ground, I cannot assent to it. The letter written by the treasurer was, probably, under the circumstances, a sufficient acknowledgment in writing of the debt, to save it from the statute; and upon this ground, the decision of the case could, with more propriety, have been placed. In the *Utica Insurance Co.* v. *Blodgood* (4 Wend., 652), the suit was upon a note dated April 28th, 1818. On the 23th of August, 1824, the defendant gives a stipulation.

as follows: "Whereas, the Utica Insurance Company hold my note, dated April 28th, 1818, indorsed by C. C. B. for $1,900; now, therefore, I hereby agree not to plead the stat-ute of limitations in a prosecution for any balance that may be due on said note." SUTHERLAND, J., writing the opinion of the court, says: "The defendant is estopped by his stipu-lation from availing himself of the statute of limitations." This is all that is said about estoppel. There is no discus-sion, and no authority is cited. It is clear to my mind, that the learned judge did not use the word estoppel in the techni-cal sense of *estoppel in pais*. All he meant was, that the defendant was deprived of the benefit of the statute by his stipulation. It was wholly unnecessary to resort to the doc-trine of *estoppel in pais*, as the stipulation, beyond all ques-tion, contained a sufficient acknowledgment of the debt to take it out of the statute. In *Gaylord* v. *Van Loon* (15 Wend., 308), the plaintiff held the notes in suit, and other demands, and met the defendant, and claimed of him a large balance due. The defendant denied that he owed the plain-tiff anything; and when informed that the demands must be sued unless renewed, he said that he would not avail himself of the statute, and that a suit need not be brought on that account. On the trial these facts were proved, and the cir-cuit judge charged the jury: "That it was for them to say whether a conditional promise had not been established; whether what was said by the defendant was not tantamount to saying, 'if you prove I owe you anything, I will pay you;' and instructed them that, if such had been the language of the defendant, it would avoid the statute of limitations, or prevent its being a bar to the plaintiff's recovery." This was all that was said by the judge about the statute of limita-tions, and nothing was said about estoppel. Upon the argu-ment in the Supreme Court, nothing was said by counsel about estoppel, and the counsel for plaintiff attempted to uphold the verdict upon the very ground taken by the circuit judge in his charge; but the court held the charge to be erroneous, and granted a new trial upon the ground that what the defendant

said could not be construed into a new promise or recognition of indebtedness, while he denied all indebtedness, and this was all that was really decided in the case. Judge NELSON, writing the opinion of the court, says: "Although we cannot, upon any consistent reasoning, infer a new promise to pay the notes from what was said by the defendant, taking the whole together, yet we do not say the plaintiff is entirely remediless;" and then he goes on to discuss the doctrine of *estoppel in pais*, and reaches the conclusion that the defendant might be estopped from claiming the protection of the statute. But all he says in this branch of the opinion is *obiter*. He cites the case of *Utica Insurance Co.* v. *Bloodgood*. All the other authorities cited are upon the general doctrine of *estoppel in pais*, where it was held that a party was estopped by the admission or denial of a fact upon which another party had acted. While I think this portion of the opinion unsound, it would not be a conclusive authority, if sound, under our present statute. In *Brookman* v. *Metcalf* (4 Rob., 568) there was no agreement not to plead the statute, and no waiver of the statute by the defendant. During the pendency of an action upon a promissory note, by the plaintiffs against the maker, the defendant promised that, if they would suspend bringing an action upon another note given by him at the same time, he would abide the decision in the action then pending. The plaintiff omitted to sue the defendant until the other action was finally decided, and then his note against the defendant was outlawed. The defendant set up the statute of limitations, and on the trial denied, as a witness, the alleged promise. The plaintiffs recovered, and, on appeal, the court held, that while defendant's promise was not sufficient, being by parol, to save the note from the statute, yet that the defendant was estopped from availing himself of the statute. While I cannot assent to the doctrine of this case, it is a fair illustration of the mischief that will follow if estoppels, upheld by parol declarations, shall be permitted practically to subvert the statute. Fraud and perjury will be resorted to for the purpose of prolonging the exit

ence of stale demands; and when a party fails to uphold a parol promise, because it is condemned by the statute, he will seek to reap the benefit of it as an estoppel.

I am therefore in favor of reversing the judgment of the General Term, and affirming that of the County Court, with costs.

Sutherland, J. Assume that the appellant's promise, agreement or statement, whichever you choose to call it, that he would not plead the statute of limitations, might have been regarded as an express promise to pay the debt, or as an acknowledgment of the debt as subsisting, from which a promise to pay might have been implied before the Code; or assuming that, had such promise, agreement or statement been in writing, it would have been sufficient evidence of a new or continuing contract, within section 110 of the Code; that the respondent cannot use the promise, agreement or statement as an estoppel, or by way of estoppel, is not a sequence of either assumption.

True, the promise could not be actually used both ways in the same case; but what I mean is, that it does not follow that it cannot be used or received as an estoppel, because, had it been in writing, it would, or might have been, sufficient evidence of a new or continuing contract, within section 110 of the Code.

But the promise was not in writing, and therefore could not be used by the respondent under section 110 of the Code; and the question is, whether it could be used by him by way of estoppel.

I think, clearly not. If it estops the appellant, what does it estop him from? Why, from effectually *pleading* the statute of limitations. Nothing more, or less, or other. Now, one may waive, or lay aside, the protection or benefit which his position gives him the right to claim under a statute; that is, one owing a usurious or outlawed debt may pay it, or he may, I assume, by his conduct or words estop himself from proving that the debt is outlawed, or is usurious; but

one cannot estop himself from pleading the statute of limitations, or the statute against usury or any other public statute. One may lay aside or waive the protection of a statute, but he cannot lay aside or suspend the statute; and to permit one to estop himself from pleading a statute, would in effect be permitting him to thwart or suspend the operation of the statute.

Blackstone says (3 Com., 308), that an estoppel may be a special plea in bar, " which happens where a man has done some act, or executed some deed, which estops or precludes him from averring anything to the contrary." That is, applying what Blackstone says to this case, the plaintiff and respondent might have pleaded in bar of the defendant's plea of the statute of limitations, that he had done some act or executed some deed which estopped him from effectually pleading the statute; that is, from proving that the statute had attached.

One by his conduct, by act, or words, may estop himself from proving or showing that a different state of things, or of facts, existed than he misrepresented or induced another party to believe existed at the time of his misrepresentation or act.

The defendant's promise or statement in this case, which ever you call it, has none of the elements or features of an estoppel. It is a promise or agreement not to do a thing in the future. Call it a statement, and it cannot be tortured into being an *act* of estoppel, within the meaning of the doctrine of estoppel, or within any authoritative precedents of the application of that doctrine.

The defendant's promise or statement was in words, of course; but it would be absurd to call it a representation or statement of, or as to, any past or then present fact or state of things. There was no representation or deception as to any then existing state of things; indeed, no representation at all. No pretence on the part of the plaintiff of ignorance of any fact known to the defendant.

If the plaintiff has been deceived or injured, he has been deceived and injured by the defendant's pleading the statute

of limitations after promising not to do so ; that is, by the breach of his promise or agreement ; and every one who takes a promise for the payment of money, or to do or not do a certain thing, expecting the promise to be kept, is liable to be deceived and injured in the same way.

Will it be pretended, that a promise not to plead or set up usury, or infancy, or coverture, whether in the note evidencing the debt, or outside of it, would estop or preclude the promisor from effectually pleading and proving the usury, or infancy, or coverture ? Nay, further, if the defendant is estopped by his promise not to plead or avail himself of the statute of limitations, why is not the giver of every note for a usurious loan estopped, by the note, from pleading and proving the usurious agreement ? Certainly, it may be said, that the party making the loan and taking the note relied upon the promisor's keeping his promise and paying the note ; and certainly the note implies a promise not to plead or take advantage of the law against usury.

The substance of all that has been said by me in this case, if not said by Judge SELDEN, was implied in, or follows from what he did say, in *Crawford* v. *Lockwood* (9 How. Pr. R., 550, 551) ; and whatever there be in the opinions in *Gaylord* v. *Van Loan* (15 Wend., 308), and *The Utica Ins. Co.* v. *Bloodgood* (4 Wend., 652), inconsistent with what was said by Judge SELDEN on this question of estoppel in *Crawford* v. *Lockwood*, should be regarded as not good law. (See also *Kneettle* v. *Newcomb*, 31 Barb., 169.)

The affirmance of the judgment in the last cited case (22 N. Y., 249), on the ground upon which a majority of the court affirmed it, was no way inconsistent with the views expressed by Judge SELDEN in *Crawford* v. *Lockwood, supra* and who was for affirming the judgment in *Kneettle* v. *Newcomb*, for the reasons stated by him in *Crawford* v. *Lockwood*.

The judgment of the Supreme Court, reversing the judgment of the County Court, should be reversed.

All concur for reversal.

Judgment of the General Term reversed, and that of the County Court affirmed.