James H. Boomer, J.
Plaintiffs, all teachers employed by the defendant school district during the regular school year, bring this action to recover damages for breach of an alleged contract of employment to teach for the school district during the summer of 1969. Plaintiffs claim that the school district had agreed to employ them to teach during the summer session and, in breach of the agreement, the school district canceled all summer school classes for the year 1969, thus causing plaintiffs to lose wages from summer employment. They ask as damages the amount of money they would have earned had the summer classes been held, less any amounts they actually earned from other summer employment in 1969. The facts, as they developed upon the trial, are as follows :
On March 22, 1969, notices were posted on the bulletin boards in the school buildings of the district stating that applications would be received from teachers who desired to teach during the 1969 summer session and that application forms were available at the school offices. Thereafter, all of the plaintiffs submitted application forms indicating their desire to teach during the 1969 summer session. In April of 1969 each of the plaintiffs received a letter signed by the Assistant Superintendent for Personnel of the district, stating:
“We take pleasure in informing you that you have been selected to teach in the Secondary Summer School this summer. Your assignment will be..............................
“ Summer school for teachers will extend from Tuesday, July 1 through Thursday, August 14th. July 4th is a holiday.
“While this assignment is made in good faith, you must understand it is entirely contingent upon budget approval and summer school enrollments.
“ To complete our records properly, will you kindly detach the bottom portion and return immediately to my attention? ”
In each letter the space for the assignment was filled in, stating specifically the class and the school to which the addressee would be assigned. The bottom portion of each letter read as f ollows:
“I do......intend to teach in summer school this year.
“ I do not......intend to teach in summer school this year.”
*698 All of the plaintiffs indicated their intention to teach in summer school by filling out, signing, and returning to the assistant superintendent of personnel the bottom portion of the letter.
This letter, plaintiffs claim, constituted an offer of employment made by the school district which, when accepted by the return of the bottom portion, ripened into a contract. And this contract was breached when the district subsequently canceled all summer school classes for the year 1969. It is my determination that no enforceable contract arose between the parties for the reason that the parties never agreed upon the compensation to be paid to the teachers for their summer employment. There can be no contract unless the parties have agreed upon all of the essential terms thereof (9 N. Y. Jur., Contracts, § 16). “ The general rule is that price is an essential ingredient of every contract for * * * the rendering of services. Accordingly, an agreement must be definite as to compensation. In order that an executory agreement may be valid, it is generally necessary that the price be certain or capable of being ascertained from the agreement itself.” (9 N. Y. Jur., Contracts, § 51; see, also, United Press v. New York Press Co., 164 N. Y. 406).
Concerning compensation, the April letter is silent and there is no other evidence from which the amount of the compensation can be determined. The terms of employment, including compensation, of teachers of the school district were the subject of an agreement dated June 12,1968, between the school district and the Rush-Henrietta Educators Association, the bargaining agent for the teachers of the school district. This agreement expired June 30, 1969, and negotiations for a new contract were begun in March of 1969. On June 4, 1969, the negotiating teams for the school district and the Rush-Henrietta Educators Association agreed upon the terms of a new contract including the rates of compensation as well as the work conditions for summer school employment. This tentative agreement was subject to the approval of the school district and of the members of the Rush-Henrietta Educators Association. The members of the Rush-Henrietta Educators Association met on June 13 and June 14 and rejected the proposed agreement. The proposed agreement was again rejected at a meeting of the members of the Rush-Henrietta Educators Association held in the afternoon of June 19. At the special meeting of the Board of Education of the School District, held in the evening of June 19, the board declared that an impasse, within the meaning of the provisions of the Taylor Law, existed in the negotiations *699 for a contract. The board then, by resolution, canceled the 1969 summer school program and abolished all 1969 summer employment positions since “no contract for the fiscal year 1969-1970 has been entered into ” between the board and the Rush-Henrietta Educators Association.
If we can read into the April letter any intention concerning the terms of compensation, such intention can only be that plaintiffs were to be paid in accordance with the terms of the contract to be negotiated between the school district and the representatives of the teachers, the Rush-Henrietta Educators Association. At the time the letter was sent, negotiations for such a contract were under way, but that contract was not concluded. Since the parties never agreed upon an essential term of summer school employment — the compensation to be paid — there arose no enforceable contract and the cause of action for breach of contract must be dismissed."
Plaintiffs, in their complaint, have alleged a second cause of action claiming that plaintiffs had the right to rely upon the school district’s representation that plaintiffs would be employed to teach during the 1969 summer school session; that plaintiffs did rely upon this representation and did not seek other summer employment, and as a consequence they lost the opportunity to earn moneys during the summer of 1969. This cause of action apparently relies upon the doctrine of equitable estoppel.
“An equitable estoppel rests largely on the facts and circumstances of the particular case; consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances.” (21 N. Y. Jur., Estoppel, § 15.) Equitable estoppel has been defined as a doctrine “ used to preclude a party by maintaining, by evidence, that which he has before expressly or tacitly denied, or disproving that which he has before expressly or tacitly admitted, when the other party has acted upon the faith of the admission or denial in such a manner that he will be injured unless the same is held conclusive.” (Shapley v. Abbott, 42 N. Y. 443, 447-448.) Except in the case of a promissory estoppel used as a substitute for consideration (Allegheny Coll. v. National Chautauqua County Bank, 246 N. Y. 369; 3 Pomeroy, Equity Jur. [5th ed.], § 808b), an estoppel must be based upon a representation concerning a past or present fact, as distinguished from a promise of something for the future (Shapley v. Abbott, 42 N. Y. 443, 449, supra.) The doctrine of estoppel cannot be applied to supply an essential term of an *700 agreement such as price (Deering-Millihen & Co. v. Modern Aire of Hollywood, 231 F. 2d 623, 624-627). “ Ordinarily, the doctrines of waiver and estoppel will not operate to create a contract that never existed” (National Farmers Union Prop. & Cas. Co. v. Michaelson, 110 N. W. 2d 431, 439 [N. D.]); the court will not write a new contract for the parties by estoppel (Orcutt v. Tucson Warehouse & Transfer Co., 83 Ariz. 200).
Here, the April letter of the school district was at most a promise to employ the plaintiffs to teach at the 1969 summer school session and not a statement of a past or existing fact from which an equitable estoppel can arise. Furthermore, since the terms of the summer school employment including the compensation to be paid, were not stated or agreed upon, that promise was too uncertain to form a basis of a contract. I conclude, therefore, that the school district is not now estopped by its April letter from denying the existence of a contract. Any holding to the contrary, would vitiate the rule that there can be no enforceable contract unless all of the essential terms thereof are agreed upon.
Defendant’s proposed findings of fact have been adopted as marked.
Judgment is granted for the defendant and the complaint is dismissed.