Capsouto v Capsouto (2022 NY Slip Op 01116)





Capsouto v Capsouto


2022 NY Slip Op 01116


Decided on February 22, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2022

Before: Kapnick, J.P., Gesmer, González, Kennedy, Shulman, JJ. 


Index No. 655738/16 Appeal No. 15172 Case No. 2021-01118 

[*1]Samuel Capsouto, Plaintiff-Respondent,
v
Jacques Capsouto, Defendant-Appellant, Capsouto Associates Realty LLC et al., Defendants.


Wayne Greenwald, P.C., New York (Wayne M. Greenwald of counsel), for appellant.
Law Office of Stanley Chinitz, New York (Stanley Chinitz of counsel), for respondent.



Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about February 5, 2021, which granted plaintiff Samuel Capsouto's (Samuel) summary judgment motion and declared that he and defendant Jacques Capsouto (Jacques) own 40 shares of nominal defendant Washington BC Studio Corp. as tenants in common, unanimously modified, on the law, to remand for trial to determine the percentage interests held by Samuel and Jacques in the cooperative shares, and whether this action is barred by laches, and otherwise affirmed, without costs.
Plaintiff Samuel Capsouto (Samuel) brought this action against his brother Jacques Capsouto (Jacques) concerning, inter alia, their ownership rights in 40 shares of stock in Washington BC Studio Corp., a cooperative corporation which owns the building located at 451 Washington Street, New York, New York. The shares of stock at issue are appurtenant to a proprietary lease for the ground and basement floors of the building (the premises). Samuel, Jacques and their now deceased brother Albert initially purchased the shares on or about June 28, 1979. The day before, the brothers formed a partnership titled Capsouto Associates, which they converted to an LLC titled Capsouto Associates Realty LLC on or about January 6, 1997.
At issue here is Samuel's motion for partial summary judgment on the first cause of action in the fourth amended complaint, in which he seeks a declaratory judgment that he "owns outright 20 shares of Washington BC Studio Corp. and possesses a 50% interest in the Proprietary Lease." The motion court held that Jacques and Samuel owned the shares as tenants in common, and that they own them equally based on the language of the stock certificate.
On appeal, Jacques does not dispute that he and Samuel own the shares as tenants in common, but he does dispute that their ownership interests are equal.
Although the decision states the stock certificate provides that the three brothers owned the shares equally, this was erroneous since the certificate is silent on that point, as is the proprietary lease. "While there is a presumption that tenants in common share equally in their common tenancy, such a presumption may be rebutted if the facts show that they hold the tenancy in unequal shares. A court . . . may take into account the amounts invested in the property by the . . . tenants in determining the shares to which they are entitled" (McGuire v McGuire, 93 AD3d 701, 703 [2d Dept 2012], lv denied 19 NY3d 808 [2012]).
There is conflicting evidence as to how much Samuel and Jacques invested. On the one hand, the fourth amended verified complaint alleges, "All or most of the funds [used] to purchase the Stock Certificate came from the sale of a loft unit . . . that Jacques and Samuel . . . owned equally." On the other hand, the deposition testimony of Jacques and nonparty Aaron Gelbwaks, the disbarred attorney who had represented some or all of the three Capsouto brothers for 20 to 30 [*2]years, supports Jacques's position that he was the majority owner because he contributed more of the funds. Jacques' position is also supported by Samuel's acceptance, after Albert's death, that his share of the income from renting the premises was 46.5%, rather than 50%. This conflicting evidence necessitates a trial (see generally Aguilar v City of New York, 162 AD3d 601 [1st Dept 2018]).
Jacques's contention that Samuel should be estopped from claiming he owns 50% of the shares is unavailing. There is no admissible evidence that Samuel's tacit admission (see Shapley v Abbott, 42 NY 443, 447 [1870]) that he had only a 46.5% interest in the shares after Albert's death was intended to influence Jacques to his injury or that Jacques actually changed his position to his injury (see Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448 [1958]; Payne v Burnham, 62 NY 69, 73 [1875]). We will also not consider Jacques' arguments which were premised on his purported 2020 affidavit since it was not notarized (see e.g. John Harris P.C. v Krauss, 87 AD3d 469 [1st Dept 2011]).
Finally, we reject Jacques's argument that Samuel's claim that he owns 50% of the shares is barred by laches. This cannot be decided as a matter of law, for there is conflicting evidence as to when Samuel discovered or should have discovered that the shares were in his, Jacques's, and Albert's names, as opposed to in the name of Capsouto Associates. The fourth amended verified complaint alleges that Samuel did not discover this until November 2017. On the other hand, defendant points out that Samuel — together with his brothers — signed a stock power before a notary on November 30, 2001, assigning the shares to the Small Business Administration as collateral for a loan taken by nonparty S.A.J.E. Restaurant Corp. and that this should have alerted Samuel to the fact that the shares were in the brothers' names rather than in the name of Capsouto Associates.
In light of the foregoing, Jacques's argument that they operated as a de facto partnership is academic.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 22, 2022