KNEETTLE *v.* NEWCOMB *et al.*

The exemption from sale on execution of certain property of a householder rests upon a public policy, looking to the preservation of families against the improvidence or misfortune of their head, and the latter cannot, by a prospective agreement, waive such exemption.

Independently of this particular policy, it is not, it seems, within the power of parties to give, by their contract, any other effect to judgments and executions than that which the law attributes.

APPEAL from the Supreme Court. Action for taking and converting the personal property of the plaintiff. Defence, that the defendant Newcomb recovered a judgment against the plaintiff, and that the property was levied on by the defendant Brown, a deputy sheriff, by virtue of an execution on the judgment, by the direction of Newcomb. The property seized and sold on the execution consisted of household furniture and the tools of the plaintiff's trade as a glass-blower. It was found that the plaintiff was a householder, having a family for which he provided, at the time when the notes hereinafter mentioned were made, and also when the property was seized and sold on the execution; and that all the articles so seized and sold were exempt from levy and sale on execution by the statute. The whole value of the property was $600. A part of the articles, of the value of about $60, were possessed by the plaintiff at the time of giving the notes, and the remainder he acquired subsequently. The plaintiff forbid the taking, claiming that the property was exempt from execution. The notes on which the judgment was recovered were expressed to be given for value received, and each of them contained the following words: "And I hereby waive and relinquish all right of exemption of any property I may have from execution on this debt."

The Supreme Court, sitting in the fifth district, held that the defendants were not warranted in seizing the exempt pro-

perty; and judgment was given in favor of the plaintiff. The defendants appealed. The case was argued in March last by

*Samuel Beardsley,* for the appellants.

*W. & L. J. Sanders,* for the respondent, submitted a printed argument.

DENIO, J. I am of opinion that a person contracting a debt cannot agree with the creditor that, in case of non-payment, he shall be entitled to levy his execution upon property exempt from levy by the general laws of the State. The statutes which allow a debtor, being a householder and having a family for which he provides, to retain, as against the legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity which would be frustrated if an agreement like that contained in these notes, entered into in connection with the principal contract, could be sustained. A few words contained in any note or obligation would operate to change the law between those parties, and so far disappoint the intentions of the legislature. If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for small demands, and in that way the policy of the law will be completely overthrown. Every honest man who contracts a debt expects to pay it, and believes he will be able to do so without having his property sold on execution. No one worthy to be trusted would, therefore, be apt to object to a clause subjecting all his property to levy on execution in case of non-payment. It was against the consequences of this over-confidence, and the readiness of men to make contracts which may deprive them and their families of articles indispensable to their comfort, that the legislature has undertaken to interpose. When a man's last cow is taken on an execution on a judgment rendered upon one of these notes, it is no sufficient answer to say that it was done pursuant to his consent freely given when he contracted the debt. The law was designed to protect him against his own improvidence in giving such consent. The statutes contain many

examples of legislation based upon the same motives. The laws against usury; those which forbid imprisonment for debt, and those which allow a redemption after the sale of land on execution, are of this class. So of the principle originally introduced by courts of equity, and which has been long established in all courts, to the effect that, if one convey land as security for a debt, and agree that his deed shall become absolute if payment is not made by the day, he shall still be entitled to redeem on paying the debt and interest; and so also with executory contracts without consideration to make gifts, and the like. In these cases, the law seeks to mitigate the consequence of men's thoughtlessness and improvidence; and it does not, I think, allow its policy to be evaded by any language which may be inserted in the contract. It is not always equally careful to shield persons from those acts which, instead of being promissory in their character and prospective in their operation, take effect immediately. One may turn out his last cow on execution, or may release an equity of redemption, and he will be bound by the act. In thus discriminating, the law takes notice of the readiness with which sanguine and incautious men will make improvident contracts which look to the future for their consummation, when, if the results were to be presently realized, they would not enter into them at all. If, with the consequences immediately before them, they will do the act, they will not generally be allowed to retract; it being supposed, in such cases, that valid reasons for the transaction may have existed, and that, at all events, the party was not under the influence of the illusion which distance of time creates. Ordinarily, men are held to their executory as well as their executed contracts; but, in a few exceptional cases, where the temptation is great or the consequences peculiarly inconvenient, parties are not allowed to make valid prospective agreements. The present is, in my opinion, one of those cases. Before the passage of the exemption laws, contracts for the payment of money at a future time involved the consequence that all the debtor's property, without exception, might be taken on the execution in case of default. By the statutes

exempting certain property, the legislature in effect determined that it was inexpedient to allow contracts entailing such results; and this was done by providing that certain property, of limited value, should not be taken. Parties cannot now stipulate that their contracts shall have the same effect as under the former law, for that would be hostile to the policy thus established.

There is another consideration belonging to the subject, which should be referred to. These exemption laws apply only to householders who have families for which they provide. It is a fair inference from this feature that one object of the legislature was to promote the comfort of families, and to protect them against the improvidence of their head. This was so considered by the Supreme Court in *Woodward* v. *Murray* (18 John., 400). "I think it clear," said Judge PLATT, "that the legislature meant to confer this privilege on each of those little primary communities called families." Again: "It was designed as a protection for poor and destitute families; and the forlorn and destitute condition of his family, in the absence of the husband and father, gave them a peculiar claim to the benefit of the statute." Some articles are now exempt which do not enter into the common use of the family as such; but it was supposed that the protection of the team and the implements of a man's trade would be likely to enable him to keep his family together, and to preserve the domestic establishment from want and dispersion. Assuming this to be within the policy of the enactments, it is obvious that a contract like the one contained in these notes is subversive of it, and consequently illegal and void.

The maxim, *modus et conventio vincunt legem*, is not of universal application. It applies only to agreements in themselves legal. Where no rule of law or principle of public policy is concerned, the parties may, by contract, make a law for themselves. One object of municipal law is to promote the general welfare of society. The exemption laws seek to accomplish this, by taking from the head of a family the power to deprive it of certain property by contracting debts which shall enable

Kneettle *v.* Newcomb.

the creditors to take such property on execution. The parties to this contract sought to set aside those laws, so far as this debt was concerned. This they could not do.

The contract, if held valid, would change the effect of the legal instrumentalities which the law has provided for the collection of debts. Executions upon judgments for debts authorize the seizing of all the debtor's property, except the articles specially exempted. These the officer is forbidden to take, unless the debt was contracted in the purchase of property which was itself exempt from execution. (Laws 1842, ch. 157.) I do not think it is within the power of parties, by their contracts, to give any other effect to judgments and executions than that which the law attributes to them. Could a person, when contracting a debt, agree, for instance, that the act abolishing imprisonment for debt should not apply to any judgment which should be recovered on that contract, or that on such judgment there should be no right in the debtor to redeem any land that might be sold under the execution, or that he should not be discharged under any insolvent act? Clearly this could not be done; and upon the same principle I think the debtor could not, when contracting the debt, agree that exempt property might be taken on the execution. The law does not permit its process to be used to accomplish ends which its policy forbids, though the parties may, by a prospective contract, agree to such use.

The same precise question involved in this case came before the Supreme Court in *Crawford* v. *Lockwood* (9 How. Pr. R., 547); and the court came to the same conclusion which I have reached. (See also *Harper* v. *Leal,* 10 id., 282.)

For these reasons, I am of the opinion that the judgment of the Supreme Court ought to be affirmed.

All the judges concurred — SELDEN, J., for the reasons stated by him in *Crawford* v. *Lockwood* (*supra*).

Judgment affirmed.