Norris et al. vs. Kidd.

---

Norris et al vs. Kidd.

HOMESTEAD: *Claim of, must be asserted before sale, etc.*
    Smith, a married man and the head of a family, without having selected or appropriated the same for a homestead under the act of March 28, 1871, owned and occupied the house and lot in question

(and no other real estate) at the time of the rendition of the judgment and the sale of the same on execution; and was present at the sale, and notified the sheriff and the bidders that he claimed the property as his homestead. On ejectment brought by the purchaser, and plea of general issue by defendant: *Held*, that a failure or neglect to select the homestead in the manner pointed out by law amounts to a waiver of the right; and having been neglected, a debtor cannot assert it in an action of ejectment; that the exemption, if intended to be claimed, must be asserted before the sale, and a debtor cannot prevent the sale of his homestead by simply telling the sheriff and bidders, at the sale, that he claims the property as his homestead.

APPEAL from *Drew* Circuit Court.
Hon. JOHN A. WILLIAMS, Special Judge.
*A. H. Garland,* for appellants.

McCLURE, C. J. On the 11th of April, 1872, Forest B. Smith was the owner, in fee, of a one undivided half of a town lot in the town of Monticello. On the day above named, Edmund R. Norris, Levi E. Taylor and James N. Norris recovered a judgment against Smith; and on the 24th of June, 1872, the house and lot were sold on execution to satisfy said judgment, and purchased by the execution creditor. The property not being redeemed from sale in July of 1873, the sheriff made a deed to the purchasers for the property now in dispute.

It appears from the agreed statement of facts that at the time of the rendition of the judgment, and at the time of the sale on execution, Smith, who is a married man and the head of a family, was living in the two upper rooms of said house, and that the lower room was occupied as a drinking saloon; that Smith was not the owner of any other real estate than the house and lot in question; that on the day of sale, Smith was present and announced to the sheriff and to the bidders that he claimed the premises as his homestead, and forbid the sale,

and that Smith did not file a claim in writing under the act of March 28, 1871. In June of 1873, Smith, being in possession of the premises, rented the same to one Robert A. Kidd, who went into possession. In July following the appellants commenced an action of ejectment against Kidd, who pleaded the general issue, and the cause was submitted to the court, sitting as a jury, upon an agreed statement of facts. The finding was for the defendant. A motion for a new trial was made and overruled, and an appeal granted to this court.

The facts stated, the question is, What is the law applicable to the case? Every resident of this state who is a married man or the head of a family is entitled to a homestead, exempt from sale on execution, or any other final .process from any court, except as against certain debts specifically mentioned in article twelve of the constitution.

The first question arising in this case is, Does mere occupancy by a resident, who is a married man or the head of a family, amount to an appropriation of the property occupied as a homestead? In the case of *Cook v. McChristian*, 4 Cal., 23, it was held that it did; but that decision is based upon the ground that the statute did not provide any mode by which the claimant could express an intention to dedicate the property as a homestead. Such, however, is not the case in this state, and the reason for the rule not existing, the case cited cannot be regarded as an authority.

The homestead right of the resident is created by article twelve of the constitution, and, like the homestead act of California, it fails to provide the manner and mode of its selection. While the rule adopted in the case just cited might have been applicable to the state of affairs existing in this state prior to the act of March 28, 1871, it can have no application now.

The exemption provided by our constitution simply confers

on a resident a personal privilege, which may be insisted upon or waived at his option.    It forces no privilege upon him, nor does it compel him to withhold the appropriation of his property from the satisfaction of his debts.    *Chamberlain v. Lyell,* 3 Mich., 457; *Slaughter v. Detiney,* 10 Ind., 104.

The provision of our constitution on the subject of homestead, while its general features are in some respects the same, is unlike the exemption law found in Gould's Digest, in this, that the statute no where provides how it shall be selected, who shall select it, or to whom the application shall be made.    And the conclusion that may be reached in the case, for the reasons stated, cannot be regarded as overruling *Tumlinson v. Sweeney,* 22 Ark., 400, or those following it under the homestead act of December 8, 1852.    In the case alluded to, the court was not passing on a question of law, but was determining whether there was any evidence to sustain the finding of a jury, that the defendant had a residence on certain lands at the time of the sale on execution.    This court said there was evidence to sustain the finding, and affirmed the judgment.    Whether it was the debtor's duty to enjoin the sale, was not presented to or passed upon by the court.

Our present constitution says the homestead is to be "selected by the owner;" but how, when, and to whom he shall make application to select it, is not therein provided.    The legislature, as it has the unquestioned power to do, has pointed out how, when, and to whom the application to select shall be made.    From a reading of the old law, as found in Gould's Digest, the mind is left in doubt as to whether the court shall set off a homestead to a judgment debtor, or whether he is to select it himself.    The constitution does away with all ambiguity, and designates by whom the right of selection shall be exercised, and the legislature having pointed out the method of selecting, we say that the ruling of those states where no

such provision is made can have little or no weight in determining the law of this case.

The question of waiving the benefit of an exemption was discussed in the case of *Kneetle v. Newcomb*, 22 N. Y., 249. In the case alluded to, Kneetle executed his note, in which he states, "I hereby waive and relinquish all right of exemption of any property I may have from execution on this debt." The question as to whether this was a waiver of the exemption laws of the state was submitted to the court of appeals of New York, and it said that "A person contracting a debt cannot agree with the creditor that, in case of nonpayment, he shall be entitled to levy his execution upon property exempt by the general law of a state. * * One object of municipal law is to promote the general welfare of society. The exemption laws seek to accomplish this, by taking from the head of a family the power to deprive it of certain property by contracting debts which shall enable creditors to take such property on execution. The parties to this contract sought to set aside those laws, so far as this debt was concerned. This they cannot do. Parties, by their contracts, cannot give any other effect to judgments and executions than that which the law attributes to them. In these cases, the law seeks to mitigate the consequences of men's thoughtlessness and improvidence; and it does not allow its policy to be evaded by any language which may be inserted in the contract."

In the case of *Chickering v. Greenleaf*, 6 N. H., 51, the payer of a note, at a time when he was liable to be imprisoned for debt, stipulated that he should be "exempted from arrest by virtue of any process of law founded on this note." The exemption in this case, as will be observed, was for the benefit of the debtor, while in the case of *Kneetle v. Newcomb, supra,* it was for the benefit of the creditor, and the supreme court of New Hampshire held that such an exemption might be the

subject of contract, and that the debtor could not be imprisoned. In the case of *Elmore v. Higgins*, 20 Iowa, 250, the debtor stipulated, at the time of executing the note and mortgage, that the creditor should be confined to the mortgaged property for the payment of the debt, and the supreme court of Iowa held that the maker of the note could not be held responsible beyond the proceeds of the mortgaged property. In a case decided at the present term of this court (*Richardson, Ex'r, v. Thomas, ante*, p. 387), a debtor limited the creditor to the mortgaged property, and this court held that the other property of the debtor could not be seized and applied to the payment of any balance that might be due after the sale of the land described in the mortgage.

In the case of *Kneetle v Newcomb*, 22 N. Y., 250, the court say: "One may turn out his last cow on execution, or may release an equity of redemption, and he will be bound by the act." Just why it is that a debtor may waive an exemption after judgment and not before is not stated in any of the authorities; but all of them agree that the debtor may waive it after judgment, and that a nonassertion of the right given by statute until after sale amounts to a waiver. *Kneetle v. Newcomb*, 22 N. Y., 155; *State v. Melange*, 9 Ind., 198; *Sullivan v. Winslow*, 22 id., 155.

Whether this distinction arises out of the fact that the debtor is better able to judge of the extent of the inconvenience and deprivation he will suffer by parting with his property when the sheriff is at his door with an execution, than he was at the time he created the debt; or whether an agreement to waive the benefits of an exemption law is such an agreement that a refusal to comply with it could not be asserted or enforced in the courts, on the grounds that the law forbids the making of such a contract, is not well settled. The true reason and the proper distinction, we apprehend, is found in the fact that

there is no inhibition on the creditor waiving a portion of his execution rights; while in the case of the debtor, the law, for the purpose of protecting him from oppression, and upon humanitarian grounds, declares he shall not be reduced to absolute want, or become a public burthen simply to satisfy the greed and avarice of his creditor. In the one case there is no waiving of a statutory benefit enacted to promote the general welfare and comfort of the citizen, and prevent the suffering consequent to a state of poverty, while in the other there is.

Mere occupancy, we have said, does not constitute or give the property the character of a homestead; because a debtor may allow the homestead to be sold, and the fact that he lived in it at the time of the rendition of the judgment and sale on execution, since the passage of the act of March 28, 1871, does not appropriate it as a homestead. The homestead given a debtor by our constitution is "to be selected by the owner thereof." This language clearly shows that he was not to be endowed with the house and lot on which the debtor resided, but that he was to have a homestead upon any lands or town lots owned by him, wherever he might select it. After the selection has been made, occupancy is necessary to give it the character of a homestead.

In the case at bar, Smith owned and occupied the property in dispute at the time of the rendition of the judgment and sale on execution, and was present at the sale and notified the sheriff and bidders that he claimed the property as his homestead. The law having pointed out a method how the homestead should be selected, the question arises, whether it can be selected in any other manner, and whether a disregard of the statute does not amount to a waiver of the right. The act of March 28, 1871, says, whenever any resident desires to claim any of the exemptions provided in article twelve of the constitution, he shall prepare a schedule, verified by affidavit, of the

property which he claims as exempted under the provisions of said constitution, and shall file the same, if such execution or other final process shall have been issued by any court of record in the office of the clerk of such court, and said clerk shall thereupon issue a *supersedeas* staying any sale under such execution.

In the case of *Tumlinson v. Sweeney*, 22 Ark., 400, this court affirmed a judgment where a debtor claimed his exemption on the day of sale, but it must be borne in mind that, at the time of the rendition of that opinion, the law did not provide how the homestead should be selected, nor to whom notice should be given. We are of opinion that the debtor may schedule his property at any time before the sale, under the present law; but that an announcement by the debtor to the sheriff or bidders, that he claims certain property as his homestead, is not sufficient to stop a sale. The law says the property shall be scheduled, and that the schedule shall be filed with the clerk, whose duty it is to issue a *supersedeas* staying the sale. This, in our opinion, is the only manner in which a sale of the homestead can be prevented.

All judgments are liens from the date of rendition upon the lands owned by the judgment debtor within the jurisdiction of the court rendering the same. Gould's Dig. ch. 96, sec. 5. The fact that a judgment debtor may be entitled to a homestead exemption does not prevent the lien from attaching to the land that may be selected as a homestead. The selection of the homestead takes it from the maw of the execution and suspends the sale. The provision of our constitution is, that the homestead of a married man, or head of a family, shall be exempt, not from a judgment lien, but sale on execution or other final process. We are aware that the courts of Illinois, California and Iowa have held that a judgment lien would not attach to a homestead, but the weight of authority is the other

way, and the rulings in the different states seem to have grown out of the different constructions placed upon the word "homestead." In the states just mentioned, the idea seems to prevail that the law creating a homestead is an absolute investiture of the debtor with an estate, the fee in which can never be sold on execution so long as claimed and occupied as a homestead. The supreme court of Massachusetts, in *Smith v. Provin*, 4 Allen, 517, say: "The homestead right is not a fee simple estate in the premises set off as a homestead. It is only an estate in the premises to be held while the husband is a householder." The same court, in the case of *White v. Rice*, 5 Allen, 76, say: "The proper construction of the statutes giving an exemption of a homestead is, that it is a mere exemption of the particular estate created by the statute, and that all existing beyond this is a reversionary interest, subject to attachment by all creditors." Washburn, in his work on Real Property, p. 326, says: "A homestead in law means a home place, or place of the home, and is designed as a shelter of the homestead roof, and not as a mere investment in real estate, or the rents and profits derived therefrom." In construing the meaning of the word homestead under the law of Ohio, the court said, *In re Watson*, 2 B. R., 174: "The debtor does not acquire in the homestead set off to him a fee simple absolute deed, but he possesses only a qualified right, a right to possess and occupy it so long as he uses it as a homestead for his family. The remainder or reversion in such property, after that right is ended, belongs to his creditors, and passes by the assignment to the assignee, who may sell the same." The views expressed in the foregoing cases are in accord with our own. No injustice is done the debtor by allowing the judgment lien to attach to the property claimed as a homestead, for the judgment lien in no manner interferes with his occupancy; nor does it deprive him of a home. In *Hoyt*

*v. Howe*, 3 Wis., 752, the supreme court of Wisconsin say: "The effect of the exemption is, merely to prevent a forced sale of the property while it is occupied as a homestead by the debtor and his family, and if he convey it, the purchaser takes subject to the lien." See *Simmons v. Johnson*, 17 Wis., 527.

Under the law of Minnesota, judgments are a lien on all the real property of the debtor in the county, owned by him, at the rendition of the judgment. The question there, as it is here, was, whether the judgment lien attached to the homestead, and the supreme court of that state said: "The lien attached to the homestead owned and occupied by the debtor as a residence, and that the exemption of the homestead was only an exemption from sale on execution, while the debtor occupied it with the family, and did not affect the lien of the judgment."

In the case of *Whitworth v. Lyons*, 39 Miss., 468, the question was between a judgment creditor and a purchaser from a judgment debtor, as to whether the judgment lien attached to the homestead from the date of its rendition, and the supreme court of Mississippi said: "The object of the statute manifestly was, to secure a home and a means of support to the debtor and his family; but not to render the property exempt when it was not occupied by them, or some of them, after his death, as their place of residence. Consequently, after the sale and abandonment of possession, the right of exemption was at an end, and the rights of judgment creditors, prior to the sale, would attach."

These decisions, and others which will be stated, are all based upon the theory that a homestead is a possessory right, and a right of occupancy that the process of the law shall not be used to disturb during the existence of the statutory estate. *Folsom v. Carte*, 5 Minn., 333; *Tillotson v. Millard*, 7 id., 520; *Whitworth v. Lyons*, 39 Miss., 467.

In the case of *Smith v. Brackett*, 36 Barb., 574, the supreme court of New York say : " The exemption is a mere personal privilege which the statute secures to the debtor, which does not run with the land.   The object of the statute seems to have been to secure a habitation to families from motives of public policy, rather than the protection of the debtor's property against the claim of creditors.   In the case just cited, judgment had been obtained against a debtor, and after the rendition of the judgment, the debtor mortgaged the property and waived the benefit of the exemption act.   The question then arose as to priority of liens, and the court held that the judgment lien had the preference, and the court, in disposing of the question, say : " The exemption is from sale on execution, and does not exempt the property from being bound and charged by the judgment."

In the case of *Allen v. Cook*, 26 Barb., 378, it appears that Cook obtained judgment against Packard who was the owner of a house and lot in Saratoga, and which was occupied by himself and family.   The house and lot, at the rendition of the judgment, was registered under the law of the state as a homestead.   After the rendition of the judgment, Packard sold the house and lot to one Allen.   This done, Cook sued out an execution and directed the sheriff to levy on the house and lot formerly owned by Packard.   The question presented was, " Did the judgment ever become a lien on the property and, under the circumstances, is the same liable to satisfy said judgment ?"   In response to the question, Judge ALLEN, speaking for the court, says : " The lien of the judgment upon the exempt realty is clearly preserved, but the remedy is suspended until the debtor ceases to be a householder."   Continuing, he says : " Suppose the day or month after he has secured his right, his wife should die, and his children all having arrived at the age of twenty-one years, the debtor should

remove from the premises; unquestionably they might be sold under execution. Suppose the day before these casualties happened, the debtor should convey the property to a third person, would it be exempt from such sale? I apprehend not. Could he then convey while he was such householder, and go out of possession of the property, and resort to abandoning his house with his family; or could he sell the property, put the money in his pocket and abscond, leaving his family entirely unprovided for, and the purchaser be protected against the sale under execution? I think not; for in that event the main object of the law would be frustrated, and the intention of the legislature to provide a home for his family, as well as for the debtor himself, be entirely defeated, and he be enabled to practice a fraud upon his creditors and the community. The homestead is a personal right and cannot be conveyed away."

Our constitution is silent as to the right of the debtor to sell and convey his homestead; nor does it declare that the purchaser shall have any right, beyond those he would acquire under an ordinary conveyance of real property subject to existing liens and incumbrances. It must be evident to all, that the framers of the constitution did not intend to confer the power on a debtor to sell his homestead discharged of all lien. The constitution itself recognizes an estate in remainder, and a termination of the homestead estate. The fifth section of article twelve declares, "The homestead of a family, after the death of the owner thereof, shall be exempt from the payment of his debts in all cases during the minority of his children, and also so long as his widow shall remain unmarried, unless she be the owner of a homestead in her own right." This clause of our constitution clearly discloses the intention that the homestead property of the debtor, after it had served the policy of the law, should be applied to the payment of debts,

instead of passing to his heirs discharged of all liens, under the statutes of descent and distribution.

A careful review of the authorities discloses the fact that the rulings of the courts of Massachusetts, Ohio, Wisconsin, Minnesota, Mississippi and New York are in antagonism with those of California, Iowa and Illinois on the question as to whether the judgment lien attaches to the homestead property.

Under our statute, judgments are liens from the date of rendition, and continue so for three years, and may be revived from time to time in the manner prescribed by law. If we declare that the homestead property is not subject to a judgment lien, the result will be that all priority of liens will be stricken down, and that a junior judgment would be entitled to a pro rata distribution of the proceeds of the sale. This would in no manner benefit the debtor, for it can be a matter of little concern to him, after his interest in it has ceased, what becomes of the proceeds, in a question where the dispute is between his creditors. In our opinion the framers of the constitution, by exempting the homestead from sale, did not intend, in any manner, to interfere with the rights of priority between judgment creditors, as fixed by law.

A point is made in argument upon the fact that the lower portion of the building was used for other purposes than a homestead, and it is argued that, because it was so used, it could not be claimed. The question whether a building is a dwelling house or homestead does not depend on the fact of its situation, external appearance, or internal arrangement, or that it would be vastly more valuable as a place of business than as a residence; but upon the fact that it is really and truly occupied as a dwelling house for the owner and his family; nor does the owner forfeit the benefit of his exemption by devoting some portion of the building to another use

than a mere residence of his family.  *Phelps v. Rooney,* 9 Wis., 80; *Rhodes v. McCormick,* 4 Clarke (Iowa), 368.

In the case of *Greenwood & Son v. Maddox & Toms,* 27 Ark.' 660, Greenwood & Son recovered judgment against Maddox & Toms, and attachment was issued and levied upon certain real estate in which Toms had an undivided interest.  Toms filed a motion to quash the levy on the ground that the levy was made on his homestead.  The court below quashed the levy and the case was brought here by appeal.  In disposing of the question thus presented, this court said :   " We think the better practice would have been, for the court not to have quashed the levy, but to have left the appellants at liberty to take out their execution, and Toms at liberty to apply for partition.  It may be said that the appellants might be too fast for him with their execution.  It may be answered that he could obtain an injunction to stay the sale until his homestead right could be ascertained and perfected."

Here we have a recognized decision of the right to levy an execution on the property of a debtor, claimed as a homestead, with an intimation that if the debtor desires to prevent a sale, he must resort to equity and assert his rights, and that it was error in the court below to quash a levy because the property was claimed as a homestead.  At the time of the rendition of this opinion, the attention of the court was not called to the act of March 28, 1871, regulating the manner in which the execution debtor should designate the property claimed as a homestead.  In fact the motion to quash was made before the passage of the act alluded to.  The proceedings in the case at bar were had since the passage of that act, and the question to be determined is, whether a failure or   neglect to comply with the law amounts to a waiver of the homestead.

In the case of *Miller v. Sherry,* 2 Wall., 248, the supreme court of the United States held  that a  party whose  property

had been ordered to be sold by a court of chancery could not set up his homestead right, in an action of ejectment; that it must be set up, if at all, before the property is sold, and that after sale, the homestead right could not be set up to defeat the action. When we take into consideration that the Illinois statute, creating the homestead, declares that "no release or waiver of such exemption shall be valid unless the same shall be in writing, subscribed by such householder and his wife, and acknowledged in the same manner as conveyances of real estate, it being the object of this act to require, in all cases, the signature and acknowledgment of the wife as conditions to the alienation of the homestead," this case may be regarded as a strong one on the question of waiving a homestead, it being at variance with the decisions of the supreme court of that state. *Herschfeldt v. George*, 6 Mich., 468.

From a careful review of all the authorities, we are of opinion that a failure or neglect to select the homestead in the manner pointed out by law amounts to a waiver of the right, and having been neglected, that a debtor cannot assert it in an action of ejectment. If the exemption is intended to be claimed, it must be asserted before the sale, and a debtor cannot prevent a sale of his homestead by simply telling the sheriff and bidders at a sale that he claims the property as his homestead. In such a case the sheriff is no more bound to pay attention to the claim than he would be where a party might exhibit to him the judge's allowance of injunction, restraining the sale of property, where the party had not given the bond required in the injunction order. When a sheriff levies, he must sell the property unless ordered not to by the authority issuing the execution, or the judgment creditor.

The judgment creditor has the right to have the property appraised, to ascertain whether it exceeds in value the sum of five thousand dollars. If the sheriff had returned the execu-

tion and indorsed thereon that the defendant claimed the property as his homestead, such a return would not have authorized the clerk, on the application of the plaintiff to have appointed appraisers.   If the provisions of the act of March 28, 1871, may be disregarded by a debtor, without impairing his right to a homestead, then the power is placed in his hands to prevent an appraisement of what he may verbally notify the sheriff he claims as his homestead, or a sale thereof, no matter what its value.

The judgment of the Drew circuit court is reversed and remanded, with instruction to enter judgment in accordance with this opinion.

BENNETT, J., dissenting.