3175 HOLDING CORPORATION, Plaintiff, *v.* THEODORE SCHMIDT, Defendant.

Municipal Court of New York, Borough of Manhattan, Second District, March 23, 1934.

*Irving Cohen,* for the plaintiff.

*Mortimer L. Rabson* [*Louis M. Fribourg* of counsel], for the defendant.

LEWIS, DAVID C., J.   The plaintiff, as landlord, and the defendant, as tenant, executed a written lease of an apartment in a New York city tenement house (otherwise designated a multiple dwelling).   In the body of the lease we read the following clause: " The tenant

expressly releases the landlord from any liability for any damage by leakage, water, steam, gas, electricity, snow, rain, fallen or cracked plaster, heat, cold, damp, defective or interrupted telephone or other service, or any other matter, reason, cause or thing in whatsoever manner the same may be caused, nor shall any of said enumerated causes amount to nor will the tenant claim a constructive eviction by reason thereof, nor by reason of any condition of the leased apartment or the apartment building at any time after the entry or occupation of the tenant."

The tenant claims a defective structural condition warranted his abandonment of the premises; and that he moved out.

The leased apartment remained vacant. The landlord sued for rent. The tenant defended on the theory of a constructive eviction. The plaintiff recovered a verdict for the full rent.

Prior to the trial the defendant had served a subpœna *duces tecum* on the tenement house department of the city of New York. Unfortunately, the witness from the department responding to the subpœna did not come to the Trial Term part of the court (that is, until the case was practically entirely completed). The witness had attended in the calendar part and remained there until it was too late.

After both sides had rested, and after each counsel had summed up before the jury, the witness from the tenement house department was guided to the Trial Term part. Counsel for the defendant then moved to reopen the case. The court denied the motion.

When the jury returned a verdict, the court focused the attention of the attorneys on the clause purporting to waive the right of the tenant to claim a constructive eviction. Neither side had dealt with this covenant during the trial.

The defendant thereupon moved to set aside the verdict. The court stated that if the clause was valid and binding, constructive eviction could not be a defense. Thereupon, and at the court's suggestion, the motion to set aside the verdict of the jury was taken under advisement to inquire into the legality of this clause.

We are here dealing not simply with a contractual obligation but with a statutory duty. The violation of one simply constitutes a breach of contract; the violation of the other results in a tort. (*Cullings* v. *Goetz*, 256 N. Y. 287; *Altz* v. *Leiberson*, 233 id. 16.) And in the consideration of this duty, the courts have treated it, not simply as a matter of private concern, but as a matter of public policy. For we are told: " We may be sure that the framers of this statute, when regulating tenement life, had uppermost in thought the care of those who are unable to care for themselves. The Legislature must have known that unless repairs in the rooms of

the poor were made by the landlord, they would not be made by any one. The duty imposed became commensurate with the need. The right to seek redress is not limited to the ctiy or its officers. The right extends to all whom there was a purpose to protect." (*Altz* v. *Leiberson, supra.*)

With the validity and the objects of the statute established, the duty of the court is plain. The fulfillment of the statute becomes the function of the court. For the enactment of the law, unless followed by its enforcement, is an empty gesture.

The State has decreed that the owner shall keep all parts of a tenement house in good repair. (See Tenement House Law, § 102.)

And the courts have expressly repudiated the theory of implied waiver.

" The duty rested upon the defendant, landlord, to keep and maintain the plaintiff's apartment, including the ceiling, in a reasonable safe condition. * * *

" If tenants could be forced out of rooms and apartments in tenement houses by landlords refusing to make repairs, by having visited upon them the rule of contributory negligence as a matter of law if they remained, it would in effect nullify to a large extent not only the provisions of the Tenement House Law, but also weaken the enforcement of the so-called Emergency Rent Laws." (*Eckert* v. *Reichardt*, 243 N. Y. 72, 75.)

This attitude of our courts is not peculiar to the relationship of landlord and tenant.

" The legislative purpose was in the direction of promoting the public good, in mitigating the possible harshness of such a contract by preserving some right to a vendee, and, if originally, as part of the former Lien Law, perhaps, having more especial reference to waivers in contracts for the sale of household furniture and certain other articles of a household nature, the statute has been so changed by amendment as to read in its present unqualified form. However designed, in the general purpose, to afford some equitable protection against the improvidence and misfortune of the poor, or necessitous, it is for the legislature, not for the court, to restrict the general operation of the act. In *Roach* v. *Curtis* (191 N. Y. 387, 391), in speaking of a clause in such a contract, which permitted the vendors to dispose of the retaken goods at private sale, Judge WILLARD BARTLETT, delivering the opinion of this court, doubted ' whether such a modification is consistent with public policy.' " (*Crowe* v. *Liquid Carbonic Co.*, 208 N. Y. 396, at p. 403.)

No lease of a tenement dwelling is superior to the law. Every hiring of an apartment in a tenement house is subject to the statute.

Parties cannot by private personal covenants cheat the State out of her sovereignty or deny her citizens the protection of the law.

" But both these elementary principles are subordinate to and qualified by the doctrine that neither by comity nor by will of contracting parties can the public policy of a country be set at naught." (See *Straus & Co.* v. *Canadian Pacific Ry. Co.*, 254 N. Y. 407, at p. 415.)

The court must respect the public policy of the State.

" The power to determine what the policy of the law shall be rests with the Legislature within constitutional limitations, and when it has expressed its will and established a new policy, courts are required to give effect to such policy." (*Straus & Co.* v. *Canadian Pacific Ry. Co., supra,* at p. 413.)

Recent fire tragedies suffered in some tenements in our great city again sound the warning, and impress us with the absolute need for the proper enforcement of these laws.

It is my opinion that the clause purporting to waive this right of the tenant contravenes the public policy of the State and cannot be sustained.

The tenant was not compelled to vacate the premises as long as the violation continued. . The law puts the duty on the other foot. It was the landlord's obligation to comply with the statute; not the tenant's duty to remove from the premises. The effect, therefore, of the testimony of the tenement house department, had it been available and adduced, cannot be easily determined.

In this connection the court notes chapter 871 of the Laws of 1930, evidencing a further determination on the part of the State to allow a tenant to remain in an apartment and not forfeit his remedies, though there may be grounds for constructive eviction.

The court concludes that it would promote substantial justice to set aside the verdict and grant a new trial on the grounds stated, and on the additional ground that the question of waiver on the part of the tenant was not fully or properly submitted to the jury.

Settle order on two days' notice.