OWNERS & TENANTS ELECTRIC CO., INC., Plaintiff, *v.* GEORGE TRACTENBERG, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, March 6, 1936.

*Leon A. Mnuchin,* for the plaintiff.

*Hirsh, Newman, Reass & Becker* [*Alexander Stone* of counsel], for the defendant.

LEWIS (DAVID C.), J.   The defendant charges the plaintiff and also the landlord corporation with the illicit traffic in electricity.   Here is a challenge that must be met now — not later.   If the indictment is sustained, that ends this lawsuit.

The question before the court involves the much-discussed submetering business.   This court does not essay any opinion on any economic, technical, industrial or practical phase of this practice. The problem is not what such considerations might warrant, but what the law allows.

Both the plaintiff in this action and the landlord in this case are domestic business corporations organized under article II of the Stock Corporation Law.   The landlord corporation entered into a lease with the defendant containing the following covenant: " If the demised premises be in a building where the landlord *shall desire* to supply electric current to the tenant for lighting purposes, the tenant agrees that the tenant will purchase from the landlord or any other company designated by the landlord all electric current that the tenant requires at the demised premises and will pay the landlord for the same, as the amount of consumption shall be indicated by the meter furnished.   Therefore price shall be the same as that charged for similar consumption by the Public Service Corporation which maintain conduits nearest the premises. *   *   *   Any amount as to which the tenant shall at any time be in default for in respect to the use of electric current   *   *   * shall be deemed to be ' additional rent ' for the demised premises."

The plaintiff's brief tells us that pursuant to this covenant the landlord contracted with the plaintiff " to install meters and the necessary electrical fixtures in the premises and to read, repair and inspect the meters and bill the tenants for electricity consumed and to collect in its own name for such electricity." (See plaintiff's brief, No. 1, p. 2.) And suit is now brought to recover the price of the electric current used by the defendant, a tenant, and supplied through his landlord pursuant to the covenants of the said lease.

It will be observed that the plaintiff is not a party to the lease and had neither contract nor dealings with the defendant. It came into the picture through its separate private agreement with the landlord under a contract wherein it would share the net profits, constituted of the difference between the wholesale rates, paid by the landlord to the electric company, and the retail rates, collected and received from the tenant.

The landlord does not act as an agent for the tenant either in dealing with the submetering company or in its transactions with the electric light company; nor is there any relationship between the tenant and the electric light company.

The defendant asserts that the covenant for the sale and supply of electric current and its due fulfillment could only be entered into and executed by a corporation chartered as a transportation company.

Neither the plaintiff nor the landlord claims any such power. (See p. 8, plaintiff's first brief.)

The defendant brings the problem before this court upon an application for summary judgment. We are confronted with the much discussed submetering business, a practice that has been considered by the New York Attorney-General's office, the Public Service Commission, and different judicial tribunals in this jurisdiction and elsewhere. (*Opinion of Attorney-General*, 35 State Dept. Rep. 243; *Matter of Great South Bay Ferry Co.*, 23 id. 144, 145; *Matter of United States Lens Co.*, 21 id. 551; *8284 Corp.* v. *Garey*, 137 Misc. 197; *Supervision Co.* v. *Mogelewsky*, 139 id. 256; *Public Serv. Comm.* v. *Rogers Co.*, 184 App. Div. 705; 6 Public Service Comm. Rep., 1st Dist., 289, 296; *Opinion of Attorney-General*, 45 State Dept. Rep. 367; *People ex rel. N. Y. Edison Co.* v. *Pub. Serv. Comm.*, 191 App. Div. 237.)

It seems strange that a practice that has invited so much attention could attain such an extensive development over so long a period and apparently await a complete and conclusive and final determination by the higher courts of our jurisdiction.

One must admit that the open, undisturbed, notorious pursuit of such business by a stock corporation may lend it an air of legality in the eye of the lay public. There is a natural hesitancy also to condemn a practice so long permitted and openly countenanced. However, in this field of the law adverse possession has not taken root.

No one disputes that the business of buying and selling electricity is not — and could not be — included in the express purposes of a stock corporation, such as the plaintiff or the landlord. There is, of course, an express exception included in the law granting an ordinary stock corporation a limited privilege of dealing in electric current or power. But the statute in plain terms impresses the authorization with the limitations therein set forth. (See Public Service Law, § 2, subd. 13.)

" Subd. 13. * * * except where electricity is generated or distributed by the "producer" solely on or through private property for railroad or street railroad purposes or for its own use or the use of its tenants and not for sale to others." (§ 2, subd. 13, in part only.)

Whatever other rights to engage in the sale or supply of electricity are to be claimed by a stock corporation must be found among the implied powers of such a corporate entity. Indeed, it would be strange if one were to find an implied right where an express right could never exist. And were there no necessity for the express exception — why the statutory provision? Certain differences between the operations permitted by the exception referred to and the transactions concerned in this litigation are patent as well as substantial. For it is one thing for a corporation to generate electricity for its own use, in the conduct of its expressly chartered purposes, and incidentally thereto distribute the surplus current or power so generated for the use of its own tenants on its private premises. It is a radically different thing for a corporation to intentionally buy more current than it requires, with the definite and deliberate object of reselling the current at a profit, to tenants on its property. In one instance, the disposal of the use of the surplus electricity is only an incident to a legitimate activity, besides being expressly excepted from the prohibition of the statutes. In the other, the *buying* and *selling* of electricity for profit (as contrasted with its distribution for *use*), is dealt in as a business — a business not strictly necessary nor in fact incidental to any of the expressly authorized activities of the corporation. (See 21 State Dept. Rep. 551, *supra*.)

The features that mark the difference are the things that distinguish the case of *People ex rel. Cayuga Power Corp.* v. *Public Service Comm.* (226 N. Y. 527) from the case at bar.

Here, too, the landlord furnishes nothing of his own — neither the plant nor the power. The electric light company supplies the current; the submetering company supplies the rest. True, the landlord pays the electric light company, but he collects more than he pays and thus seeks the profits of a middleman.

The prohibition of the Transportation Corporations Law will not allow the landlord or the submetering company to justify the increase in cost, that is, the difference between what is paid to the electric company and what is charged to the tenant for the current as an assessment for meter service. For such a charge, either directly or indirectly, is expressly prohibited by the statute. (See Transportation Corporations Law, § 16.) And furthermore, it may be that the maintenance and use by this plaintiff of the fixtures and other personal property, in connection with, or to facilitate, the distribution and sale of the electric current to persons other than its own tenants, presents a fatal impediment to any recovery. For these acts may constitute an unlawful participation in the business of an electric company.

" The term ' electric plant,' when used in this chapter, includes all real estate, fixtures and personal property operated, owned, used or to be used for or in connection with or to facilitate the generation, transmission, distribution, sale or furnishing of electricity for light, heat or power." (Public Service Law, § 2, subd. 12, in part only. See, also, 35 State Dept. Rep. 243, *supra.*)

It is my opinion that the acts complained of were not within either the express exception of the statute, nor within the implied powers of the plaintiff or the landlord; and fall within the pale of prohibited and unlawful transactions. For that reason they cannot stand.

" Another principle of general recognition is that a corporation cannot enter into or bind itself by a contract *which is expressly prohibited by its charter or by statute, and in the application of this principle it is immaterial that the contract, except for the prohibition, would be lawful.* No one is permitted to justify an act which the legislature within its constitutional power has declared shall not be performed. * * * But in not infrequent instances corporations enter into unauthorized contracts, which are neither *mala in se* nor *mala prohibita,* or when the only prohibition or restriction is implied from the granting of specified powers. It is this class of cases which open up the field of controversy." (Italics mine.) (*Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24, at pp. 30, 31.)

The factual features between the case at bar and the case cited (*Bath Gas Light Co.* v. *Claffy*) give an entirely different complexion

to the subject before this court. In the instant case the electric or power company is not a party to the transaction. To the contra, the dealings are here confined to corporations without any express or implied power to conduct them; while the electric company which supplied the current has been paid at its wholesale rates.

The Legislature can by enactment write exceptions into the law. The court by construction cannot read different or other exceptions into the law. Nor do I believe the plaintiff can take refuge behind the past performances, nor seek the shelter of an *ultra vires* contract already executed. For even the sanction of prior rulings coupled with the fact that the prohibited operations were conducted within the precincts of private premises cannot purge the transactions of the illegal taint. (*People ex rel. Oneonta L. & P. Co.* v. *Pub. Serv. Comm.*, 180 App. Div. 32.)

The doctrine that an *ultra vires* contract after it becomes fully executed may yield an enforcible obligation must have its limitations. To unnecessarily stretch the principle to cover expressly forbidden acts threatens to write a practical philosophy of life (that the sin of an offense is in its untimely discovery) into the binding precedents of law.

" Whatever is done by a corporation without authority is done in violation of law, for all action, not authorized directly or indirectly, is prohibited. And action forbidden by statute is void and a void act is no act (*Village of Fort Edward* v. *Fish*, 156 N. Y. 363, 374), and the defendant could, therefore, gain no implied franchise by usurping powers which the law forbade it to exercise, no matter how long continued.

" 'That which was originally void, does not by lapse of time become valid.' (Broom Leg. Max. [8th Am. ed.] 177.)" (*Pub. Serv. Comm.* v. *Rogers Co.*, 184 App. Div. 705, at p. 707.)

Furthermore it is not claimed that the method proposed constituted a plan intended to give the tenant the benefit of collective or co-operative bargaining. To the contra, the necessity of the tenant is made the subject of profit between the landlord and the submetering company. The advantage is with the landlord. The disadvantage is with the tenant. And I do not think we can hold that because the covenant provides that the rates to be charged shall be the same as the public rates rescues the transactions; for even though the rate which the landlord collects is a retail rate chargeable to the small consumer, the rate he pays is the wholesale rate charged to the large consumer, the difference being his cut. Such a doctrine cannot be made the basis for any judicial sanction of a practice which would fix the rates by private covenant

instead of public act; and otherwise destroy many of the provisions set up by the statutes. Nor can we allow any real significance to the fact that the charges are made rent. Calling the charge for electricity rent does not change the nature of the transaction. Such a provision only arms the landlord with an additional remedy for the collection of the charges. The fact is the tenant buys electricity. He does not lease it. Indeed, under the lease, the landlord is not even compelled to sell electricity to the tenant. It is a matter of his option. (See covenant.)

Nor can it be said that the submetering corporation simply rents its meters and facilities. To the contra, it appears that the submetering company installs and uses its meters and facilities, in a sort of joint adventure with the real estate corporation for the sale of electricity for profit.

This situation has been dealt with differently in another jurisdiction. In that territory it seems to be established that if the utility company desires to directly supply the individual tenant with current, the landlord cannot compel the utility company to submit to the proposed submetering; covenant or no covenant of a lease to the contrary notwithstanding. (*Sixty Seven So. Munn, Inc.*, v. *Bd. of Pub. Utility Comm. of New Jersey*, 106 N. J. L. 45; 147 Atl. 735; 107 N. J. L. 386; 152 Atl. 920; 283 U. S. 828; P. U. R. 1929A, 329–338.)

The *Munn* case involved an identical problem. That opinion canvasses the ground and reviews the rights and reasons entering into the ruling. This court assumes the liberty of a reference to that case in lieu of extensive recital in this writing.

The plaintiff's case suffers from another weakness and defect, and with a well-timed objection the defendant strikes at this vulnerable spot. The blow is a telling one. It puts the finishing touches to the plaintiff's complaint.

It will be noted that the plaintiff brings this action in its own right and name. The complaint pleads no assignment. The plaintiff alleges no express trust. The plaintiff is neither an assignee nor trustee. It weakly professes a right to maintain this action in its individual name because of the power-of-attorney clause contained in the contract with the landlord. But even here it is wrong; for, at the best, this agreement casts the plaintiff in the role of an independent contractor. The contract requires the plaintiff to install meters necessary for the resale of current, to read the meters, render bills to the tenants and collect the same, to settle complaints over bills, test the meters, repair and replace meters; in short, to completely carry out the entire enterprise.

The express obligations of this contract not only establish the plaintiff as an independent contractor but impose upon it all of the practical functions of an electric company, and consequently impress upon it the character of an electric corporation. However, all that the plaintiff claims is the right to act as an agent for the landlord. Taking it at its word that it is the landlord's agent, it is not the real party in interest and cannot maintain this action. (Civ. Prac. Act, § 210; *Spencer* v. *Standard C. & M. Corp.*, 237 N. Y. 479.)

The court has not overlooked the citation by the plaintiff of the case of *Kirshenbaum* v. *General Outdoor Advertising Co.* (258 N. Y. 489). This ruling does not govern the province of this problem. It is one thing for the landlord of a business building to enter into a private covenant with the tenant on a matter not prohibited by public policy or public law. It is an entirely different proposition to insist that the statutory inhibition against the conduct of the business of an electric corporation by a private stock corporation can be sidestepped by such methods or measures. Suffice it to say that even the authority of the *Kirshenbaum* case, within its own realm of landlord and tenant law, has been judicially restricted. (*3175 Holding Corp.* v. *Schmidt*, 150 Misc. 853; *Villa Victoria, Inc.*, v. *Fanning*, 157 id. 280.) However, I do not consider that citation has any application to this case.

Defendant's motion is granted. Ten dollars costs. Ten days' stay.