BOYD H. WOOD COMPANY, Respondent, *v.* RAYMOND HORGAN, Appellant.

Supreme Court, Appellate Term, Second Department, April 30, 1942.

*William Springer* [*Saul L. Harris* of counsel], for the appellant.

*Matthew W. Wood,* for the respondent.

Judgment affirmed, with twenty-five dollars costs.

SMITH and McCOOEY, JJ., concur.

LEWIS, J. (dissenting). Defendant appeals from a judgment in favor of the plaintiff.

The action is to recover one month's rent under an alleged renewal of a lease. The answer is a general denial and a defense of surrender and acceptance.

The facts are undisputed. By written lease defendant rented an apartment in plaintiff's building for a period of one year commencing October 1, 1937, at a monthly rental of fifty-five dollars, and remained in possession until September 30, 1941. Paragraph 12 thereof provides that the lease shall be renewed for a further period of one year, at the same rental, unless either party on or before the first day of August next preceding the termination of any term granted under the lease shall give notice to the other of intention to surrender or have possession of the premises. It is expressly made operative with respect to any renewal or extension of the lease.

Plaintiff contends that the lease was automatically renewed for a period of one year commencing October 1, 1941, and the action is for rent for the month of October, 1941, the apartment having been vacant during that month. Notice of the existence of the renewal clause was not given to the tenant as required by section

230 of the Real Property Law. Plaintiff, nevertheless, seeks to hold the defendant liable, relying upon paragraph 18 of the lease, which states that " the provisions of chapter 576 of the Laws of 1934 are hereby waived." That chapter includes section 230 of the Real Property Law.

The issue is whether the statutory requirement for notice may be waived in the manner attempted. Section 230 of the Real Property Law provides:

" Certain provisions of leases to be inoperative unless express notice thereof is given to tenant. No provision of a lease of any real property or premises which states that the term thereof shall be deemed renewed for a specified additional period of time unless the tenant gives notice to the lessor of his intention to quit the premises at the expiration of such term shall be operative unless the lessor, at least fifteen days and not more than thirty days previous to the time specified for the furnishing of such notice to him, shall give to the tenant written notice, served personally or by registered mail, calling the attention of the tenant to the existence of such provision in the lease."

That section was enacted for the protection and benefit of tenants. Its apparent purpose is to prevent the operation of automatic renewal clauses unless the tenant is given notice " at least fifteen days and not more than thirty days " from the time his obligation thereunder arises. (See *Ginsberg Realty Co., Inc.,* v. *Greenstein,* 158 Misc. 473, 474.) Thus, tenants are to be given a real opportunity to indicate whether they wish to renew, and cannot be bound because of prior forgetfulness or neglect in recalling the existence in the lease of an automatic renewal clause.

Section 230 would be completely nullified if effect were given to provisions in leases which waived the notice requirement provided therein. There is no reason to suspect that the tenant will better remember the provision for waiver than the automatic renewal clause itself. The instant case in fact is a particularly good illustration of the practical need for liberally enforcing the requirements of section 230. The provision for automatic renewal is contained in paragraph 12 of the lease herein. The attempted waiver is not set forth until paragraph 18, and then in language which on its face fails to apprise the tenant of its contents.

It is a rule frequently stated that parties may stipulate away statutory and even constitutional rights (*Hotchkiss* v. *City of Binghamton,* 211 N. Y. 279; *Phyfe* v. *Eimer,* 45 id. 102; *Matter of New York, L. & W. R. R. Co.,* 98 id. 447), provided, however, that such stipulations are not against public policy. The term " public policy " refers to the law of the State as found in the Constitution,

the statutes or judicial records. (*People* v. *Hawkins*, 157 N. Y. 1, 12; *Glaser* v. *Glaser*, 276 id. 296, 301; *Matter of Carey* v. *Cruise*, 246 id. 237, 243; *Mertz* v. *Mertz*, 271 id. 466, 472.) " Public policy is necessarily variable. It changes with changing conditions. It is evidenced by the expression of the will of the Legislature contained in statutory enactments." (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 N. Y. 407, 413.)

This definition cannot be taken to mean that for all purposes every statute represents a statement of public policy. If such were the case, no statutory provision could be waived. It would seem, however, that in the instant case, where the Legislature has enacted a remedial statute designed for the protection of a large class — tenants generally — the statute rests upon public policy. In the light of the reason for the enactment of section 230, it would be against public policy to permit a waiver by means of executory agreement. A waiver spelled out from the conduct of the tenant, at or after the time for the notice prescribed by section 230, is entirely different.

The absence of any provision in section 230 which declares automatic renewal clauses void as against public policy is not significant. While the Legislature may have inferentially sanctioned such clauses, it established as the public policy of the State a requirement that tenants be given the prescribed notice thereof.

Although further dispute would have been precluded by a statement in the statute to the effect that executory agreements of waiver shall be deemed void, such result necessarily follows from the policy implicit in the legislation. In *Kirshenbaum* v. *General Outdoor Adv. Co.* (258 N. Y. 489) the court held that public policy does not condemn stipulations between tenant and landlord providing for the latter's immunity from liability in case of non-repair or misrepair. At the time of the decision, there was no legislative declaration with regard to such stipulations. The ensuing enactment of section 234 of the Real Property Law, which provides that agreements exempting the lessor from liability for negligence " shall be deemed to be void as against public policy and wholly unenforceable," must be read with the *Kirshenbaum* case in mind. Here, however, there is in existence a legislative mandate making notice a prerequisite to the operation of automatic renewal clauses.

Many analogous cases exist in which an executory contract waiving the benefits afforded by statute to a particular class of persons has been held ineffective despite the absence of any express legislative declaration similar to that found in section 234 of the Real Property Law. (*Kneettle* v. *Newcomb*, 22 N. Y. 249 [Exemp-

tion Law]; *Crowe* v. *Liquid Carbonic Co.*, 208 id. 396; *3175 Holding Corp.* v. *Schmidt*, 150 Misc. 853 [section 102 of Tenement House Law requiring landlord to keep all parts of house in good repair]; *St. Andrews Parish* v. *Gallagher*, 121 id. 167 and cases cited therein [Emergency Rent Laws]; *Matter of Brooklyn Loan Corp.* v. *Gross*, 259 App. Div. 165 [Exemption Law]. See, also, *Crocker* v. *Ireland*, 235 id. 760 [Statute of Limitations]; *Plumiera* v. *Bricka*, 79 Misc. 468, 478 [Pers. Prop. Law, § 65, sale of repossessed property under conditional contract of sale].)

In *Crowe* v. *Liquid Carbonic Co.* (*supra*) a conditional sales agreement provided for express waiver of the vendee's rights as given in section 65 of the Personal Property Law. The court held that such waiver was ineffectual because it was inconsistent with the public policy manifested in the legislative act. Certain language of the decision is appropriate here: " The legislative purpose was in the direction of promoting the public good, in mitigating the possible harshness of such a contract by preserving some right to a vendee, * * *. However designed, in the general purpose, to afford some equitable protection against the improvidence and misfortune of the poor, or necessitous, it is for the Legislature, not for the court, to restrict the general operation of the act."

The judgment should be reversed and complaint dismissed, with appropriate costs in the court below.