determined that he "was guilty as charged." This was clearly erroneous. People v. French, 119 N. Y. 505, 23 N. E. 1061; People v. MacLean, 57 Hun, 141, 10 N. Y. Supp. 803. The record was not introduced upon the trial, and the accused had no opportunity of explaining it. It was read and considered in his absence and without his knowledge; and certainly it was highly prejudicial, for there was a close question of veracity between the relator, the relator's witnesses, and the complaining witness. It may well be that, notwithstanding the numerical preponderance of testimony upon the relator's side, this record turned the scale. , If the record should be treated as the knowledge of the commissioners, in that it is part of the records of the department, still it was improperly considered, for, as was said in People v. French, supra, "they may neither act upon their own knowledge nor supplement the evidence with their own knowledge."

, The proceedings had should be annulled, and the relator reinstated, with $50 costs and disbursements. All concur.

PEOPLE ex rel. HOGSETT v. ROOSEVELT et al., Commissioners.

(Supreme Court, Appellate Division, First Department. February 21, 1896.)

Certiorari by Thomas J. Hogsett to review the proceedings of Theodore Roosevelt and others, commissioners of the police department of the city of New York, resulting in the removal of relator from the police force of the police department of said city. Proceeding annulled.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Tierney & Halsey, for relator.
Francis M. Scott, for respondents.

BARRETT, J. The questions in this case are the same as those in People .v. Same Defendants, 37 N. Y. Supp. 488; and the result must be the same as was reached there.

The proceedings had should be annulled, and the relator reinstated, with $50 costs and disbursements. All concur.

(15 Misc. Rep. 605.)

NEW JERSEY & P. CONCENTRATING WORKS v. ACKERMANN et al.

(Supreme Court, Special Term, New York County. February, 1896.)

1. INSURANCE—RESTRICTIONS AS TO SUITS—PUBLIC POLICY.
   The stipulation in a policy, on which 100 insurers are severally liable for a hundredth part of the insurance, that the assured shall not sue more than one of the insurers at one time,· is against public policy, though it is further provided that a final decision in any such action shall be decisive of insured's claim against each of the insurers.

2. SAME—LIMITATION.
   A condition in a policy, on which many insurers are severally liable for a certain amount of the insurance, that no action shall be brought on it after three years, is sufficiently complied with by action being brought, and some of the insurers served with process, within that time; the policy having contained a further condition, which, though void as against

public policy, provided that action should be brought against only one of the insurers, and that final decision in such action should be decisive of insured's claim against the other insurers.

Action by the New Jersey & Pennsylvania Concentrating Works against Charles F. Ackermann and others. Plaintiff demurs to the answer. Sustained.

A. Walker Otis, for plaintiff.
Julien T. Davies, for defendants.

BEEKMAN, J. On June 8, 1892, in consideration of a premium of $500 paid to the defendants, the latter issued and delivered to the plaintiff their policy of insurance, whereby they insured it for one year "against all liability arising from accidental bodily injury or loss of human life caused to an employé or employés of the assured at the place or places mentioned in the application, and situated at Ogden, Sussex county, New Jersey, or elsewhere in the service of the assured." The policy further provided that the aggregate liability should not exceed $5,000 for any individual injured or killed, and should not exceed $25,000 for any number of individuals injured or killed at one time. The underwriters are 100 in number, each insuring "as a separate underwriter  *  *  *   for himself, and not one for the other"; and the extent of the liability of each is defined in the following stipulation: "The liability of each of the underwriters, and the amounts insured by him, shall be the hundredth part of the aggregate amounts insured hereunder;" and at the end of the policy, in the clause which reads as follows: "Each of the present subscribers, as a separate underwriter, binds himself severally, and not jointly with any other, for the true performance of the premises for the amount expressed to be insured by him."

The following conditions are involved in the questions raised by the demurrer:

"(4) No action shall be brought upon this policy in any court after three years from the time when the accident occurred upon or by reason of which the cause of action accrues, unless at the expiration of said time some suit brought by the injured person, or by his legal representatives, be then pending against the assured, in which case an action may be brought within six months after the termination of such suit, and not later." "(9) The assured stipulates that suit shall not be brought or maintained upon any claim arising out of the present insurance against more than one of the underwriters at one time, nor in any court other than the highest court of original jurisdiction, and that a final decision in any suit so brought shall be decisive of his claim against each of the underwriters; and, in consideration of such stipulation, each of the underwriters hereto waives any limitation as to costs, and agrees to abide by the event of any such suit, and authorizes the attorneys to pay to the assured, out of any of the funds in their hands, the amount due under this policy. Each of the underwriters also hereby authorizes the attorneys to receive and admit service of process for him in any suit brought as aforesaid."

Certain of the defendants have interposed a joint answer to the complaint; setting up, among others, the following defenses:

"And for a second separate and distinct defense these answering defendants allege that, in and by the policy set forth in the answer, the plaintiff stipulated that suit would not be brought or maintained upon any claim arising

out of said policy against more than one of the underwriters at one time, and that in and by the said policy the said stipulation was made a condition thereof, and the insurance thereby given was made subject thereto, and that, in violation of the said stipulation and of said terms and conditions of the said policy, the plaintiff has brought this action against more than one of the persons who were underwriters, on the policy set out herein, at one time. And for a third separate and distinct defense these answering defendants allege that, in and by the policy set forth in this answer, it is provided that no action shall be brought upon said policy, in any court, after three years from the time that the accident occurred, upon or by reason of which the cause of action accrues; that in and by said policy said provision is made a condition thereof, and the insurance thereby given was made subject thereto; that the accident upon or by reason of which the cause of action herein is alleged to have accrued occurred on the 12th day of August, 1892; that the summons and complaint in this action were served upon the defendants Aaron H. Rathbone, Frank S. Bond, and Charles F. Ackermann prior to the 12th day of August, 1895, but the summons was not served upon the other answering defendants until after the 12th day of August, 1895. And these defendants allege that, except as to the said defendants Rathbone, Bond, and Ackermann, this action was brought more than three years after the time when the accident occurred, upon or by reason of which the cause of action herein is alleged to have accrued, in violation of the terms and conditions of the said policy."

The plaintiff demurs to each of these defenses upon the ground that it is insufficient in law, upon the face thereof. The question raised in respect to the second defense involves the consideration of the validity of the ninth clause of the policy above quoted. The clause in question reveals a purpose to confine litigation under the policy to a single action brought against one of the underwriters. As the policy phrases it, no suit is to be brought or maintained upon any claim arising out of the insurance against more than one of the underwriters at one time; and a final decision in any suit so brought, it is declared, shall be decisive of the claim of the insured against each of the underwriters. It will be recalled that the liability of the underwriters is several, and not joint, and that each is responsible only for a definite and separate proportion of the amount of the loss, and that, upon the loss being ascertained and liquidated, it becomes his duty, and his only, to pay it; and yet, under this stipulation, he enjoys immunity from the compulsory processes of the law until the debt of another under the policy shall have been finally determined by the judgment of the court,—that is, until the judgment has become final by affirmance on appeal, if appeals shall have been taken. The object of this is made plain when we consider the scope of the requirement that such determination shall be decisive of the claim of the insured against each of the underwriters,—decisive, it will be observed, whether the decision be for or against the insured. Doubtless, where underwriters intend honestly to meet their obligations, and to litigate only when they conceive that they have a meritorious defense, there is a measure of convenience, suitable to both sides, in this economy of legal procedure; but experience has shown that provisions of this character are so frequently used oppressively, and in aid of attempts to shirk the payment of just claims, that the courts have come to look with disfavor upon agreements in any way restricting freedom of access to them; and, while arbitration by agreement is recognized, even then the sanction of the

law is qualified by the right of a party to withdraw from it at any time before the dispute has been finally submitted to the arbitrator for decision, irrespective of the fact that the agreement to arbitrate may have been based upon a substantial consideration, and the party against whom the revocation is made may have parted with rights and advantages on the faith of the agreement. People v. Nash, 111 N. Y. 310, 18 N. E. 630. The whole matter is summed up in the statement that "no stipulation in the agreement will be sustained, either at law or in equity, as defeating this right, so as to prevent the parties from having recourse to the courts." 1 Am. & Eng. Enc. Law, 664, and cases there cited. I am not unmindful of the line of cases which sustain the binding force of a certain class of stipulations, by which the contracting parties agree, as a condition precedent to liability, that a certain fact shall be determined by arbitration, where a dispute arises in respect to it, or that a disputed amount shall be ascertained in that manner. The distinction, however, is clearly made in the case of President, etc., Delaware & H. Canal Co. v. Pennsylvania Coal Co., 50 N. Y. 250. In that case Judge Allen says (page 266):

"The distinction between the two classes of cases is marked and well defined. In one class the parties undertake, by an independent covenant or agreement, to provide for an adjustment and settlement of all disputes and differences by arbitration, to the exclusion of the courts; and in the other they merely, by the same agreement which creates the liability and gives the right, qualify the right by providing that, before a right of action shall accrue, certain facts shall be determined, or amounts and values ascertained; and this is made a condition precedent, either in terms, or by necessary implication."

It may therefore be taken as within the realm of well-settled law in this state that parties cannot bind themselves in advance not to resort to the courts for the settlement of their differences. But the question immediately arises, how far does this doctrine extend? Does it stop with the protection of the right of access, or does it secure to the litigant full liberty to prosecute and defend according to the course and practice of the courts, unhampered by any restrictions or qualifications of any kind which the contract may have sought to impose? I think the affirmative of the last inquiry embodies the correct view. It being conceded that the right to appeal to the courts cannot be stipulated away, the logic of the case demands that the litigant should not be maimed in the assertion of his right by restrictions which the law does not impose upon others. Freedom of approach must also import freedom from restraint in the exercise of all the rights which the law declares to be a part of its remedial justice. This rests upon considerations of public policy, and experience has confirmed the wisdom of refusing to parties, in anticipation of possible disputes, the erection of other tribunals for their settlement, or the imposition of limitations unknown to the law, upon the manner in which the jurisdiction of the courts shall be exercised. The subject has received recent illustration in the case of Sanford v. Association, 147 N. Y. 326, 41 N. E. 694. In that case a certificate of insurance contained this clause:

"It is hereby stipulated and agreed by and between this association and the member named herein, and his beneficiary, that the issues in any action brought against it under this certificate shall, on the demand of this association or its attorney, be referred for trial to a referee to be appointed by the court in which such action is brought."

The agreement was held to be void. In the closing paragraph of the opinion of the court, Judge Gray says:

"I think we may safely base the reason for the application of this rule upon the proposition that public policy is opposed to the enforcement of an agreement which supersedes the law, and deprives the individual of the protection which it was designed and framed to afford."

The opinion below, referred to with approval by the court of appeals, is more elaborate in its discussion of the question. Sanford v. Association, 86 Hun, 380, 33 N. Y. Supp. 512. At page 383, 86 Hun, and page 512, 33 N. Y. Supp., of the opinion, the court says:

"But parties cannot, in advance, by a general agreement, provide that their differences shall be submitted to arbitrators or referees, and thus entirely oust the court of its jurisdiction; nor can they, by such an agreement, oust the court of any part of its jurisdiction, or supersede the law which provides the method of trial, and regulates the proceedings in an action."

I do not see how the wisdom of this statement, taken in its broadest sense, can be questioned. Experience has demonstrated its wholesomeness, and a departure from it cannot be allowed without conceding to private persons the right to suspend the operation of general laws, founded on public policy, to meet what they may conceive to be the exigencies of a particular case, and to establish a code of practice of their own for any litigation which might arise under their contract, the result of which may easily be imagined.

The question now arises, has this principle been violated in the present case? As has been said, the scheme of the policy is that but one suit shall be brought upon it by the assured, and against one of the insurers only, and that the decision in that case shall be determinative of the claims of the assured against the 99 other underwriters. If the claim is sustained against one, the others agree that they shall be barred of the assertion of any defense. If, on the contrary, judgment passes against the assured, he agrees that the judgment shall be a bar to any suit he might thereafter institute against any of the others. In either case the judgment in an action between the assured and one of the underwriters is to be decisive of the claim or defense between him and the others. It is sufficient to say that this attempts an extension of the doctrine of res adjudicata not recognized by the law. Where controversies have arisen, and litigation in some form has ensued, it may well be that agreements and stipulations in præsenti are valid, providing that one or more of such controversies shall halt and abide the event of another; but that is not this case. It is here attempted to bind the parties, in advance of any controversy, and without expectation that any will arise, to renounce their remedies for prosecution or defense, thus depriving the contract of vitality as an obligation capable of enforcement. As has been said, the liability of the defendants is several; none can be held for more than a sum equal to a one-hundredth part of the loss; and each is therefore, in a certain sense, a stranger to the controversy

between the assured and the others, and whether the assured collects, or fails to collect, from them, or any of them, in no way concerns him, as he is bound and can be held for nothing more nor less than his own part of the loss, as determined by the contract. Each owes his own debt, and each debt is distinct and individual, although all arise out of the same circumstances and conditions, and are the product of a common venture. The contract, then, demands in advance a surrender by the plaintiff of his rights of action against all of the defendants but one. It is true that it does not in terms say that he shall never sue any of the others, but it compels him to renounce his causes of action against them, if the single suit which he is authorized to prosecute is adverse, which is the same thing. If, however, judgment passes in his favor, the contract compels each of the underwriters to waive every defense which he might otherwise successfully assert in respect to the particular claim made against him, and to submit to judgment without the right of being heard upon the merits of the claim for which he is sued. The principle which forbids agreements not to sue applies equally to similar contract waivers of particular defenses. Shapley v. Abbott, 42 N. Y. 443. It seems clear to me that the entire scheme embodied in the stipulation under consideration is within the prohibition of the rule as I have attempted to explain it, and that the contention of the defendants that the plaintiff cannot sue more than one of them at one time is untenable.

A consideration of the demurrer to the third defense is now necessary. Under this defense, it is claimed, on behalf of certain of the defendants, that the action has been commenced more than three years after the accident in respect to which the liability accrued, and that, under the stipulation of the policy in that regard, it cannot be maintained as to them. The validity of such a provision cannot now be questioned. Mayor, etc., v. Hamilton Fire Ins. Co., 39 N. Y. 46; Steen v. Insurance Co., 89 N. Y. 315. The only point, therefore, which is presented, is whether this condition of the policy has been violated. In considering the question it must not be lost sight of that the stipulation is not a statute of limitations, and is not to be construed as such. It is purely contractual, and is therefore like any other condition which the parties may agree upon, and is to be construed in precisely the same manner. While, therefore, the court must, in a plain case of infraction, support the agreement of the parties, and give it due effect, its exact import is always a matter of construction; and if there is ambiguity the words must be construed most strongly against the insurer, and in favor of the assured, as he might fairly have understood them, so as to sustain, rather than defeat, the contract of indemnity. Steen v. Insurance Co., 89 N. Y. 324; Hoffman v. Insurance Co., 32 N. Y. 405. In the case of Mayor, etc., v. Hamilton Fire Ins. Co., supra, Hunt, C. J., speaking of a similar contract limitation, says (page 46):

"The condition is extremely stringent. It is in derogation of the rights of the assured, as given by the statute of limitations of the state. It is often not known or not considered by the assured, and should only be permitted to prevent a recovery when its just and honest application would produce that result."

Although I have held certain provisions of the contract to be invalid, it is yet permissible to consider them for the purpose of arriving at the intention of the parties, in aid of the proper construction of other portions of the instrument. It is plain that but one action upon the policy was contemplated, in which the liability of the underwriters was to be settled in case of dispute. They agreed, as we have seen, that the judgment in that action should be decisive of the right of the insured, and the obligations of the insurers, in respect to the entire loss; and it was with that in mind, and intending to require only that the action in which the case was to be litigated on the merits should be brought within the contract period, that the stipulation in question was framed and entered into. When that was determined the whole loss was to be paid. Assuming the agreement limiting the plaintiff to a single action to be valid, would any court hold that the plaintiff was precluded from enforcing its rights against the other underwriters because the three years had expired while the litigation between it and the single underwriter was progressing? And yet, this is what the claim of the counsel for the defendants logically leads to, if his construction of the whole contract is to be accepted. Taking the defense by itself, and separating it from the rest of the pleading, his claim is that, while the plaintiff is entitled to recover from each of 3 of the defendants his proportion of the loss, it is forbidden by the terms of the policy from recovering anything from the remaining 97. It is thus gravely urged that under the contract limitation, which, in form and in substance, applies, and was intended to apply, to a recovery of the entire loss, the plaintiff may still recover 3 per cent. of it, but no more. Suppose a case where an action on such a policy has been brought against a single underwriter within the three years. A contest takes place, a trial is had, and appeals are taken, so that the period of limitation has expired before a final decision in favor of the assured is reached. Can it be for a moment maintained that the assured—nay, even the underwriters themselves—could have understood or intended that there should be then no capability of enforcing the obligations of the 99 who had not been, and who were not to be, sued while the single action was pending? Surely not, for has not each underwriter bound the assured not to sue under such circumstances, and also agreed to abide the event of the pending action? How, then, can he be heard to plead the limitation, when, according to his own construction of the agreement, his duty to pay becomes absolute only after the determination of the suit first brought? The absurdity and immorality of the consequences flowing from the construction for which the defendants now contend demonstrate its fallacy. Plainly, then, the true intent and meaning of the contract limitation were that, if no action was brought within the three years, none should be brought thereafter, but that, if one suit—for that was all the parties had in contemplation—was brought within that time, the demands of the stipulation would be fully complied with. That was the true intent and purpose of it, and it cannot now be given a more enlarged meaning because the condition binding the assured to a single action is

found to be void. If, however, such an unjust and perverted meaning is unavoidable, it can only be because the contract limitation is an essential and inseparable part of the scheme which has been condemned; and, under well-settled principles, it must then follow the fate of its associate. But it is not necessary to go so far. When the plaintiff commenced its action within the prescribed time, as it is admitted it has done in respect to certain of the defendants, it had substantially complied with the condition. That it has not served all of the defendants with process within that period is aside from the question. It is enough that a suit has been commenced before the time has expired. Thereafter no limitation can be pleaded not founded upon the statute.

In closing, I think it proper to say that the court is being burdened with litigations between such underwriters as these, generically known as "Lloyds," and those whom they have agreed to insure. Defenses of a technical character are interposed by them, under policies containing strange and unusual provisions, making it difficult, if not practically impossible, for the insured to collect an honest loss from unwilling debtors. Such contracts and expedients are justly regarded by the courts with extreme disfavor, and, in the exercise of the ample powers which the law bestows upon its tribunals, will be promptly met with that corrective treatment which the justice of the case demands. But in saying this it is also due to these defendants to state that the policy in this case is less obnoxious than many of the same class which have been brought to the attention of the court.

As I am of the opinion that the demurrer is well founded in respect to both defenses, it follows that it must be sustained, with costs.